R. D. HOWE, *City Attorney of the City of Hobart* v. A. J. DUNLAP, *Mayor,* W. C. BRADY, W. R. LIVERMORE WILLIAM HOCKENSMITH, R. R. ROHRER, W. A. WRIGHT, G. A. MAHAFFIE, C. W. GORDEN, *as Councilmen of said City of Hobart,* AND R. W. SHEPERD, *as City Attorney,* AND J. G. HARRIS, *as Police Judge.*

(Filed February 6, 1903.)

CITY OFFICER—Removal—Injunction Will Not Lie, When. Injunction is not the proper remedy to test the validity of the action of the mayor and council of a city who have removed the city attorney from office upon charges of misconduct in office; and injunction will not lie to restrain the mayor, council and police judge from recognizing as city attorney the person elected as successor in office of the person so removed.

(Syllabus by the Court.)

*Error from the District Court of Kiowa County; before John H. Burford, Trial Judge.*

*Keys & Cline,* for plaintiff in error.

*McGuire & Parker,* for defendants in error.

STATEMENT OF FACTS.

The plaintiff in error was the city attorney of the city of Hobart, having been elected to that office in October, 1901.

On February 11, 1902, he was removed from office by the mayor and council of the city of Hobart, upon charges of misconduct in office preferred against him. This action was commenced on the 20th day of February, 1902, following the action of the mayor and council in removing the plaintiff from his office. The plaintiff brought this action to enjoin the mayor, city council, and police judge from recognizing and treating the defendant, Sheperd, as city attorney of the city of Hobart, and to restrain and prohibit Sheperd from usurping the office of city attorney, and to restrain such mayor, council and police judge from refusing to recognize the plaintiff as city attorney of the city of Hobart, and from depriving him of the honor, pay, emoluments and the enjoyment of the rights and privileges of the office. A restraining order was issued by the probate judge, in the absence of the district judge from the county. A motion was filed to dissolve the temporary order of injunction. On the 3rd day of March the motion to dissolve the injunction was heard by the judge of the district court, the motion was sustained, and the restraining order issued by the probate court was dissolved. Thereafter, at the regular April, 1902, term of the district court, the cause came on to be heard, and judgment was rendered against the plaintiff for costs. From these orders and judgments the plaintiff in error appeals.

Opinion of the court by

PANCOAST, J.: The plaintiff's contention is that the city council of the city of Hobart had no authority to oust the plaintiff from office, because such action required the exercise of judicial power, and all judicial power, by the organic act is vested in the courts.

The defendant in error admits that the judicial power of the territory is vested in the courts under the organic act, as claimed by the plaintiff, but they contend that the removal of a city officer is not the exercise of judicial power but is an exercise of political power, and that such power is administrative and ministerial in its character and that such acts are therefore within the power of the mayor and city council.

Numerous authorities are cited by both sides to sustain the propositions contended for. While these are the only questions raised in the briefs, yet we think that the case must be decided here upon entirely different grounds.

First, it will be noticed that the act of removal took place on the 11th of February, and that this action was commenced on February 20, nine days after the removal had taken place. Injunction is a preventative remedy, and even if it would lie to prevent the removal in any case, this action was not brought in time. But even if the action had been commenced before the ouster, and if the object of the petition had been to restrain the mayor and council from ousting the plaintiff from his office, still such action could not be maintained, because a court of equity will not entertain an action to enjoin the removal of a municipal officer against whom charges of misconduct in office have been preferred. (*Muhler v. Hedekin,* 20 N. E. Rep. 700.)

The authorities are uniform in holding that a proceeding in the nature of an official inquiry concerning the conduct of a public officer by the council or other body, the possible end being the removal of the officer, are wholly beyond the control of a court of equity. The subject-matter of the juris-

diction of courts of chancery relates solely to civil property. Injury to property, either actual or threatened, is the foundation of chancery jurisdiction. In no case is it concerned with matters of a purely political nature. ( *Sheridan v. Colvin,* 78 Ill. 237. )

Unless the jurisdiction of a court of chancery is enlarged by express statutes, it is limited to the protection of rights of property, and has no jurisdiction over the removal or appointment of public officers. (*Ex parte Sawyer,* 124 U. S. 200; *Delahanty v. Warner,* 75 Ill. 185.)

High on Injunctions, third edition, section 1312, treating of the subject under consideration, has the following to say:

"No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy by proceedings in the nature of *quo warranto.*"

These principles of chancery are no longer debatable. They have long been settled. The plaintiff's remedy, if he has one, is by mandamus, to be restored to the possession of the office from which he has been removed. (*State ex rel. Gill v. Common Council,* 9 Wis. 254.) So that, viewing

this case from the points indicated, the judgment of the court below must be affirmed, no matter whether the acts of the council were or were not legal for any reason.  It is therefore unnecessary to decide here as to whether or not the action of the mayor and council was or was not the exercise of judicial power.  Upon the record before us there is nothing to require a decision upon that proposition.

The judgment of the district court will therefore be affirmed.

Burford, C. J., who presided in the court below, not sitting; Irwin, J., and Beauchamp, J., absent; Burwell, J., dissenting; all the other Justices concurring.

Dissenting opinion by

BURWELL, J.:  I have carefully examined the record in this case, and the authorities relied upon by the defendants in error, and I find myself unable to agree with either the rules of law or the conclusions as stated in the majority opinion in this case.  I therefore respectfully dissent from both, and desire to record my reasons as follows:

The first question, and, in my opinion, the controlling one in this case, is as to whether the act of removing a city attorney from office is the exercise of political power, or is it a judicial act?  It is true that some courts have held that the act of removing certain officers, such as the one now under consideration, is not judicial; but the constitutions of those states are different from our organic act, and many of the cases are where certain bodies, or the governor, were given the right to appoint the officer in the first instance, and the statute gave such appointing officer or board the right to remove.

It has been repeatedly held that the power to appoint carries with it the inherent right to remove, unless expressly prohibited. But the city attorney of Hobart was not appointed, he was elected by the people at a regular election. He was elected for a fixed term, and was entitled to enjoy the honor and emoluments, and perform the duties of such office during such term, unless he resigned or was removed according to law; and we have no difficulty in finding an abundance of authority holding that the removal of such an officer calls for judicial action.

In the case of the *State Board of Police Commissioners et al. v. Ezekiel M. Pritchard et al.* 36 N. J. L. 101, it is said in the syllabus:

"The right to remove a state officer for misbehavior in office does not appertain to the executive office—such act is judicial and belongs to the court of impeachments.

" Certain police commissioners of Jersey City, appointed by statute, having been convicted upon indictment of conspiracy to cheat the city, and the governor having declared their offices to be thereby vacated, and having appointed their successors: Held, that such executive action was illegal and void."

And then again in the body of the opinion, appears the following language:

" That an officer who made use of the opportunity which his position afforded to perpetrate a fraud upon the public, should be summarily cashered, is a proposition entitled to universal assent. But the result to which I have arrived is that the finding of the fact of misconduct and the graduation of the punishment are judicial and not, by virtue of our system of laws, executive functions."

In the case of *Page v. Hardin,* 47 Ky. 672, the governor of the state attempted to remove an assistant secretary and the court, in discussing his power of removal said:

"The secretary being removable for breach of good behavior only, the ascertainment of the breach must precede the removal. In other words, the officer must be convicted of misbehavior in office. And we shall not argue to prove that, in a government of laws, a conviction whereby an individual may be deprived of valuable rights and interests, and may moreover be seriously affected in his good name and standing, implies a charge and trial and judgment with the opportunity of defense and proof. The law, too, prescribes the duties and tenure of the office, and thus furnishes a rule for the decision of the question involved. Such proceeding for the ascertainment of fact and law, involving legal right and resulting in a decision which may terminate the right, is essentially judicial, and has been so considered here and elsewhere. By the common law, the forfeiture of an office held by patent or commission was enforced by *scire facias* and the judgment of a court. The trial of an impeachment is universally regarded as a judicial function, and the senate, sitting for the purpose, as being a judicial body. Similar proceedings (for the removal of officers) in the county or other courts, are held to be judicial. And we do not doubt that every proceeding for the removal of an officer for cause, that is, for official misbehavior, is essentially an exercise of the judicial power of the commonwealth, and would, therefore, refer itself to the judicial department of the government, if not otherwise disposed of by the constitution or the laws."

Throop on Public Officers, (Sec. 346), lays the rule down as follows:

"When specific causes are required, and a notice and a hearing must be had to render a removal lawful, the remov-

ing officer or body proceeds in a judicial manner, so that the decision may be reviewed by the courts."

The supreme court of Kansas held in the case of *Bland v. Jackson,* 33 Pac. 295 that a city council, when organized for the trial of a contested election over a city office, is a tribunal exercising judicial functions, and that a petition in error will lie from its decisions to the district court.

The supreme court of Nebraska has held that the authority conferred upon county commissioners to remove county officers is *quasi*-judicial and the officer removed may have an appeal to the district court.

There are other authorities which hold that the act of removing an elective officer on charges and hearing is judicial action; and I am satisfied that this is the correct rule. The judicial power of this territory is vested in certain named courts, and a city council is not one of them. And the legislature cannot confer judicial power upon any officer or tribunal not named in the organic act. This doctrine is well settled.

In the case of *Bardrick et al. v. Dillon et al.* 7 Okla. 535, this court said:

"No part of the judicial power rests in the legislature of the territory, and it has no power to confer any. No executive or ministerial officer within the territory can exercise any judicial powers, except such power be conferred by act of congress."

And it was held in the case of *Perris v. Highley,* 20 Wall. (U. S.) 375, that the legislature of a territory cannot confer upon one court any of the judicial power which, by act of

congress, has been given to another; and Justice Miller therein said that:

"The common law and chancery jurisdiction conferred in the organic act of Utah," (which was the same as our own in this particular), "on the district and supreme courts, is a jurisdiction very ample and very well understood. It includes almost every matter, whether of civil or criminal cognizance, which can be litigated in a court of justice."

In the case of *Hedges v. Commissioners of Lewis & Clark Co.* 1 Pac. 748, the supreme court of Montana said:

"The legislature cannot clothe the county commissioners with judicial powers, and give them authority to declare that a statute giving an officer certain fees is a nullity."

And in Dakota it was held in *Spencer et al. v. Sully Co.* 33 N. W. 97, that:

"Revised Statutes of United States, Sec. 1907, (Organic Act of Dakota), which provides that the judicial power in the territory shall be vested in certain courts, and in justices of the peace, prevents the legislature from conferring any judicial powers on the boards of county commissioners."

The books are full of decisions to the same effect; and the taking of evidence on the charges filed against the appellant, weighing the same and determining such charges on the evidence, was judicial action, and this power could not be conferred on the city council by the legislature, and any order made by the council was absolutely void and did not have any force or effect whatever in law. It is said in the majority opinion that:

"The plaintiff's remedy, if he has one, is by mandamus, to be restored to the possession of the office from which he has been removed."

I cannot see why mandamus would be a better remedy than injunction in this case. If the council has the power to remove the plaintiff, (which I deny), then neither mandamus, *quo warranto,* injunction, nor any other form of action would restore him to his office. The only course open to him would be by review, either before that body or some appellate tribunal, and no appeal is provided for in the statutes. If however, the order of the city council was a nullity, then it did not remove the plaintiff in error from his office; and he is still in office; and the mayor, city council, police judge, and Mr. Sheperd, whom the city council claimed to have appointed, were interfering with Mr. Howe in the due discharge of his office. But here my colleagues have laid down another rule of law, to which I cannot assent, and which, if correct, would deny relief in many cases where injunction is the only remedy that would be adequate. The rule to which I refer is the statement that: "The authorities are uniform in holding that a proceeding in the nature of an official enquiry concerning the conduct of a public officer by the council or other body, the possible end being removal of the officer, are wholly beyond the control of a court of equity and that the subject-matter of the jurisdiction of courts of chancery relates solely to civil property; that injury to property, either actual or threatened, is the foundation of chancery jurisdiction; and in no case is it concerned with matters of a purely political nature."

There is no division of authorities on the rule that, where an officer or board have the power to remove or appoint, a court of equity will not interfere by injunction; but there are very able authorities holding that injunction will lie in a case like the one before us.

In Mechem on Public Offices, sec. 994, it is stated that, while injunction will not lie to prevent an appointment to an office from which the petitioner has been wrongfully removed, (and this section assumes a removal by a board having authority to remove, but which had exercised the power wrongfully), or to try the title to an office, it may be issued to protect the actual incumbents in their exercise of it, by preventing others from interfering until the title can be determined by proper proceedings.

The supreme court of Kansas in the case of *Brady et al. v. Sweetland et al.* 13 Kan. 41, have held squarely that injunction will lie.   There was a controversy over the title to the office of treasurer of a school board.   John T. Brady was treasurer of the board; the defendant, Wheeler, claimed to be entitled to the office of treasurer of said school district, and had previously instituted an action in the nature of *quo warranto* to have his rights determined, and to obtain possession of said office.   This action was still pending, and while it was so pending, Brady and one member of the board hired a teacher for the ensuing year, and Wheeler and Sweetland, the other member of the board, hired as teacher one D. L. Anderson; and Sweetland, Wheeler and Anderson then took possession of the school house of the district, and refused Brady and the other member of the board control thereof, or to permit the teacher hired by them to teach therein. The plaintiffs then asked for an injunction, and the court said:

" We think the injunction ought to be granted.   Admitting for the sake of the argument that Wheeler is legally entitled to the said office of treasurer, yet, as the office is occupied by another person who claims to be holding it right-

fully and legally, Wheeler has no right to interfere therewith, until some court in a proper proceeding therefor determines in his favor. He cannot, while he is merely claiming the office, employ teachers and take charge and control of the property of the district, nor can he even unite with one of the members of the school board for such purpose. He has no right to attempt to take forcible possession of the office. He may prosecute his action for *quo warranto* to a final determination and then, if it be determined in his favor, the court will put him in possession of the office. But if the action should be determined adversely to him, he will, of course, never get possession of the office. And pending the litigation concerning Wheeler's or Brady's right to hold said office, Brady, as treasurer *de facto,* claiming to hold the office *de jure,* will have the right to hold and perform all the functions thereof unmolested by Wheeler or anyone else."

I desire to call attention to the case of *Armijo v. Baca,* 6 Pac. 398, decided by the supreme court of New Mexico. This was an action of injunction to restrain the defendants from usurping or attempting to usurp the office of sheriff or the offices of collector of taxes and licenses of Bernalillo county, and from ousting or attempting to oust the plaintiff and from embarrassing or attempting to embarrass, and from hindering or attempting to hinder, and from in any manner interfering or attempting to interfere with plaintiff in the discharge of his duties, or the exercise of his functions as sheriff, or collector of taxes and licenses. The bill contained a recitation of the facts which showed, as in this case, that the defendant was attempting to discharge the functions of the office. It was claimed, as in the case under consideration, that a court of chancery is without jurisdiction or power to restrain by injunction, a claimant to an office from exercising or dis-

.charging, or attempting to exercise or discharge, the duties thereof at the suit of another claimant to the same office.

The court said:

"All these alegations severally and collectively, are admitted by the demurrer to be true. We think that the foregoing recapitulation of the allegations and admissions of the parties make it abundantly manifest that a court of chancery has jurisdiction in the premises, and that equity requires that the appellant should be enjoined as prayed for in the appellee's bill."

The supreme court of Louisiana, in the case of *Guillotte v. Poincy,* 6 So. 507, said:

"The claimant (for a public office) cannot take the law in his own hands and, with the assistance of others, practically oust the incumbent in advance of judicial determination of the disputed right; and he and such others may be properly enjoined from such interference until the dispute will be judicially settled."

And again in the case of *Wheeler v. Board of Fire Commissioners of New Orleans,* 15 So. 179. In this case the board of fire commissioners had made an order which purported to remove Wheeler from office, and had appointed another in his place. The court held that these orders were void and then said:

"The officer attempted to be displaced by such an election by the board was authorized to ask, and the court justified in granting, an injunction in his favor, restraining the newly elected surgeon, the board of commissioners, and the chief of the department, from interfering with him in the performance of his duties."

The same doctrine is expressly held in *Goldman v. Gil-*

*lespie*, (La.) 8 So. 880, and in *Ewing v. Thompson*, 43 Pa. State Rep. 372; and in *Kerr et al. v. Tugo et al.* 47 Pa. State Rep. 292, the court said:

"The courts of Pennsylvania have authority, under the constitution, to redress any wrong that may be committed within the proper territorial limits of any body of men, except only the supreme legislature of the state. The remedy by injunction extends to all acts that are contrary to law and prejudicial to the interests of the community and for which there is no adequate remedy at law; and either of two conflicting bodies of men, claiming to hold one and the same office at one and the same time, may apply to the court for an injunction to restrain the other from the usurpation of powers to which they are not legally entitled."

And, further on in the opinion, the court further declares that:

"It is right for those to whom public functions are entrusted to see that they are not usurped by others. Either of these bodies has the right to demand of the courts that it and the interests of the public alleged to be committed to it, shall be protected against the usurpation of the other."

Texas has followed this just and salutary doctrine in the case of *Ehlinger et al. v. Rankin*, 29 S. W. 240. In that case it is said:

"Injunction will lie at the suit of a county clerk to restrain a person from usurping his office."

The supreme court of New York, in the case of *Armitage v. Fisher et al.* 24 N. Y. 650, held that equity will restrain the council of a city from acting through a committee appointed for the purpose of investigating the conduct of the president thereof, and from expelling him from such council.

And in the case of *People v. Edson,* 51 N. Y. superior court, (19 Jones & S.), 238, it was even held that injunction would lie to restrain the making of a corrupt appointment to office. But it is contended that the case of *In re Sawyer,* 124 U. S. 200, is decisive of this question in favor of the view taken by the majority of this court. Let us notice briefly what this case was, and I think a clear distinction will appear between it and the case at bar. The city council of Lincoln, Nebraska was proceeding to remove the police judge from office on the charge of corruption, etc. The police judge applied to the circuit court of the United States for an injunction to enjoin the city council from removing him. The order was granted, and after the police judge was removed, in violation of the injunction, the members of the council were adjudged guilty of contempt and they each sued out a writ of *habeas corpus* and were discharged, the supreme court of the United States holding that the circuit court of the United States had no power to interfere by injunction in the first instance. The supreme court of Nebraska had held that a proceeding to remove a city official by a city council was so far judicial as to entitle the officer removed to a review by the district court, and an appeal from its judgment to the supreme court of the state. There is an act of congress which provides that: "The writ of injunction shall not be granted by any court of the United States, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy," and this act is assigned as a reason for denying the authority of the United States circuit court to grant the injunction. In this connection the court uses the following language:

"But if the proceeding is of a criminal nature, it is quite clear, for the reasons and upon the authorities set forth in the earlier part of this opinion, that the case stated in the bill is wholly without the jurisdiction of any court of equity. If those proceedings are not to be considered as criminal or *quasi*-criminal, yet if, by reason of their form and object, and of the acts of the legislature and decisions of the courts of Nebraska as to the appellate jurisdiction exercised in such cases by the judicial power of the state, they are to be considered as proceedings in a court of the state, (of which we express no decisive opinion), the restraining order of the circuit court was void, because in direct contravention of the peremptory enactment of congress that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except when authorized by a bankrupt act."

And then, finally, the following language is used:

"But the ground of our conclusion is, that whether the proceedings of the city council of Lincoln for the removal of the police judge, upon charges of misappropriating moneys belonging to the city, are to be regarded as in their nature criminal or civil, judicial or merely administrative, they relate to the subject which the circuit court of the United States, sitting in equity, has no jurisdiction or power over, and can neither try and determine for itself, nor restrain by injunction the tribunals and officers of the state and city from trying and determining."

But notwithstanding the statute referred to, two of the judges, viz: Chief Justice Waite and Justice Harlan, dissented, and Justice Field, in a concurring opinion, used the following language:

"The appointment and removal of officers of a municipality of a state are not subjects within the cognizance of the

courts of the United States.. The proceedings detailed in the records in the present case were of such an irregular and unseemly character, and so well calculated to deprive the officer named of a fair hearing, as to cause strong comment. But, however irregular and violent, the remedy could only be found under the laws of the state and in her tribunals. The police judge did not hold his office under the United States, and in his removal the common council of Lincoln violated no law of the United States. On no subject is the independance of the authorities of the state and of her municipal bodies, from federal interference in any form, more complete than in the appointment and removal of their officers."

An examination of this case of *In re Sawyer, supra,* will show clearly that the supreme court of the United States did not intimate as to whether injunction would or would not be granted by a state court to enjoin persons from interfering with a public officer in the discharge of his duties as such. Howe, the petitioner, had been duly elected city attorney, and he could not be removed except by a judgment of the district court; and the pretended order of removal by the city council of Hobart, in my opinion, had no more force and effect than it would have had if made by the school board of that city. He was still the city attorney, at the time of filing his petition for injunction; and as was said by the supreme court of Pennsylvania, it was his duty to see to it that the functions which had been entrusted to him were not usurped by another; and the only way he could maintain himself unmolested in the enjoyment of those rights was by injunction. Under the opinion enunciated in this case, as I construe it, one could not enjoin another from intruding his presence into a lodge room during secret sessions of the lodge; from disturbing or interfering with religious or other pub-

lic gatherings; from publishing or circulating scandalous or libelous matter about him; from agitating strikes; or, in fact, from doing anything which is not for the protection of property rights. If this doctrine is correct, then all one has to do is to forcibly eject the governor, territorial treasurer or other territorial, county or city officer from his office, take possession of the books, seals, records, etc., and to forcibly assume to act as such officer, and he can enjoy the honor and emoluments of such office until he is removed by *quo warranto* proceeding.

How much more reasonable and equitable it would be to say that the rightful officer had not been removed by such action, and that the intruder was not claiming under any right, and that, therefore, he be enjoined from interfering with the rightful officer in the discharge of the duties of his office. Generally speaking, I think that, wherever one is entitled to enjoy property or other rights, and others threaten to and are about to deprive him of those rights, equity will protect him by injunction. The petitioner in this case did not pray that he be restored to his office, but that others be enjoined from interfering with him in the discharge of his duties; and, never having been removed, he was entitled to the relief prayed.