## BYNUM v. STRAIN, Bank Com'r.

No. 14570—Opinion Filed Sept. 14, 1923.

(Syllabus.)

**1. Equity—Action—Petition—Dual Powers of Courts.**

Under our Code procedure and system of Code pleading, the court is endowed with the dual powers of a court of equity and a court of law and redress for every remediable wrong may be had by a civil action upon the facts stated in a pleading called a petition. Sections 174 to 178, inclusive; sections 231, 263, 264 and 265 Comp. Stats. 1921.

**2. Same.**

Where a pleading is indorsed a "petition," as the statute provides, and contains a statement of facts as the statute requires, which show on their face and from their nature that plaintiff has wrongfully sustained a detriment, a wrong for which the law or equity provides redress, then from the nature of the facts stated, the court, vested as it is with the dual powers of a chancellor and a court of law, will determine and grant the proper relief.

**3. States—Appointive Officers — Validity of Removal by Governor—Pleadings— Jurisdiction.**

Where the petition of a party in interest states specifically and with sufficient certainty that he is the duly qualified and acting appointee under valid appointment from the Governor to an appointive position in an executive department of state, and that by executive order he has been wrongfully removed from such position, and that such purported order of removal is without authority of law and is void, and that he has unlawfully sustained a detriment by reason of such void and unlawful order of removal, he has stated sufficient facts to give the court jurisdiction to determine whether or not the acts complained of were without authority of law.

And by such acts it is not an improper exercise of jurisdiction for the trial court to determine the validity of the acts complained of, though determination of same may have the effect of determining the legality of title to office.

**4. Constitutional Law—Separate Departments of State Government.**

Article 4 of the Constitution creates the governing powers of our state, consisting of the legislative, executive, and judicial, and provides: "And except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others."

**5. Same — Interference with Executive Powers by Judiciary.**

In the absence of express authority of law so to do, the judiciary will not interfere with the exercise of executive powers, nor with the chief executive's sense of duties and responsibilities pertaining to the functioning of the executive department.

**6. Banks and Banking—State Banking Department—Removal of Appointees by Governor—Statutes.**

Neither the Banking Department nor the Bank Commissioner was created by the Constitution, but section 1, art. 14, of the Constitution authorizes and directs the Legislature to create the Banking Department to be under the control of the Bank Commissioner, appointed by the Governor. And the Legislature of 1907-8, by H. B. 11a and H. B. 333 and H. B. 615, formally created the Banking Department established the depositors guaranty fund, and formally authorized the governor to appoint a Bank Commissioner. S. B. 231, S. L. 1913, which is section 4172, Comp. Stats. 1921, provides that the Bank Commissioner and members of the Banking Board "shall be subject to removal by the Governor for cause"; it provides that the Governor shall exercise the power of removal, that the Governor shall determine the cause for removal, that due consideration shall be given by him to certain authorized recommendations in determining the cause for removal, and whether he shall exercise his authorized power of removal.

**7. Constitutional Law—Executive Powers—Interference by Judiciary.**

In the absence of express power conferred upon them to do so, the courts are without jurisdiction to interfere with, or to control an executive officer in the exercise of any power or the performance of any duty of an executive or administrative character, in which the Constitution and statutes contemplate the exercise of executive discretion. See 12 C. J., sec. 393, page 894.

**8. Same—Removal of Officers "for Cause"—Executive Discretion.**

Although a statute authorizing a removal by the Governor or other executive officer for cause contemplates an investigation by such officer of the grounds of complaint, and the formation of a judgment by him, it does not constitute an encroachment on the judiciary, since the judgment and discretion to be exercised is of an executive and not of a judicial nature. 12 C. J. 899.

**9. Appeal and Error — Reversal—Insufficiency of Petition.**

In order to state a cause of action within contemplation of our Code, the petition should not only contain a statement of the wrongs complained of, but must state wrongs for which the law provides relief, and though the acts complained of may be sufficient to give the trial court jurisdiction to determine their legality, yet if it be determined by this court that the trial court erred in its judgment as to whether such acts were lawful or unlawful, it would follow that the petition failed to state a cause of action, and the judgment of the trial court should be reversed.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Joe H. Strain, acting Bank Commissioner, against E. T. Bynum for injunction. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

Stuart, Sharp & Cruce, Geo. F. Short, Atty. Gen., John Barry, and N. W. McKenzie, for plaintiff in error.

Robt. Burns, Elmer L. Fulton, and Keaton, Wells & Johnston, for defendant in error.

HARRISON, J. This was a suit by Joe H. Strain, acting Bank Commissioner of the state, to enjoin E. T. Bynum from interfering with the affairs of his office.

The cause of action was primarily based upon the following alleged facts, to wit: That plaintiff, Joe H. Strain, was, on the date named, the duly qualified and acting Bank Commissioner of the state, under regular appointment of the Governor; that while thus acting, the Governor, by executive order, attempted to remove him from office, and on or about the same date appointed defendant, E. T. Bynum, to said office; that said purported order of removal and said purported appointment of Bynum were without authority of law and were both void; that defendant Bynum, claiming a legal right to do so under said void appointment, was threatening to take possession and charge of said office and its affairs, and would do so unless enjoined from so doing. He asks that Bynum be enjoined and for other relief.

Bynum demurred to the petition for failure to state a cause of action and for failure to state grounds for the remedy sought. The demurrer was overruled and injunction granted, and the cause is here upon two propositions, to wit: (1) That this being a suit for injunction, but primarily involving title to office, it is not the proper proceeding, and therefore the petition fails to state a cause of action. (2) That the Governor having legal power to do the things complained of, plaintiff has no legal

grounds for complaint, and for this reason has stated no cause of action.

As to the first proposition, it is true, as has been held by this court, and generally so held by courts of other jurisdictions, that neither injunction nor mandamus is the proper remedy for trying title to office, holding the proper procedure to be by proceeding in quo warranto. Ewing v. Turner, 2 Okla. 94, 35 Pac. 951; Cameron v. Parker, 2 Okla. 277, 38 Pac. 14; Howe v. Dunlap, 12 Okla. 467, 72 Pac. 365; State ex rel. Love v. Smith, 43 Okla. 231, 142 Pac. 408, 53 L. R. A. (N. S.) 832, and authorities cited in note.

This is true, however, not because the petition may be drawn in the ordinary form of a bill for mandamus or injunction, nor because the action may be designated by either name, nor because the prayer be for one or the other remedy, but for the very simple and fundamental reason that title to office is purely a legal question, a title created by statute and determined by statute, hence the chancery powers of a court are not called upon and will not be exercised, cannot be properly exercised, until, as a court of law, it has first determined the legal right.

The claim for relief being based upon an undetermined legal right, equity will not respond until the legal right is first determined. Upon these underlying principles of procedure, the courts have held that the legality of title to office cannot be determined by a proceeding in equity; legal rights are not determined by chancery powers.

It must be borne in mind, however, that under our Code the court is endowed with the dual powers of a court of equity and a court of law, and that redress for every **remediable wrong** may be had by a civil action upon the facts stated in a pleading called a "petition". Sections 174 to 178, inc., Comp. Stats. 1921; also sections 231, 263, 264, and 265, Id.; also St. L. & S. F. Ry. Co. v. Yount, 30 Okla. 371, 120 Pac. 627; West v. Madansky, 80 Okla. 161, 194 Pac. 439; Smith v. Gardner, 37 Okla. 183, 131 Pac. 538; Owen et al. v. Purdy et al., 90 Okla. 256, 217 Pac. 425; Security Oational Bank v. Nellie R. Geck, decided July 31, 1923 [rehearing pending]. So, where a pleading is called a "petition", as the statute provide, and contains a statement of facts, as the statute provides, which show on their face and from their nature that plaintiff has wrongfully sustained a detriment, a wrong for which either law or equity will grant redress, then from the nature of the facts stated, the court, vested as it

is with the dual power of a chancellor and court of law, will determine and grant the proper relief. But the detriment or wrong complained of must be one for which redress is provided either in law or equity. If from the nature of the facts stated, it appears that neither law nor equity will grant relief for the wrong complained of, then the "petition" has failed to state a cause of action as contemplated by law, as it is the wrong and legal or equitable relief which, in contemplation of our Code, unite to constitute a cause of action. Stone v. Case, 34 Okla. 5, 124 Pac. 960; Security National Bank v. Nellie R. Geck (Okla.) [decided July 31, 1923, rehearing pending].

So, while the demurrer admits the facts stated, it challenges their sufficiency to state a cause of action. Though admitting the truth of the facts, it denies that either law or equity will grant relief; in other words, admitting the wrong, it challenges the right to relief. In the case at bar, the demurrer admits the facts alleged, but, assuming that the Governor had authority to do the things complained of, denies plaintiff's right to relief. It raises the question whether the acts complained of constitute a wrong for which a remedy is provided.

At this point it may suffice to say that the "petition" having specifically stated the acts complained of, and that such acts were done without authority of law and were void, and that plaintiff had been unlawfully wronged by such acts, and having prayed for general relief, that is, for such relief as the facts stated would warrant the court in granting, it contained a sufficient statement of facts to give the court jurisdiction to determine the legality of the Governor's acts and thereby determine the legal right. Had the petition been indorsed, "A Proceeding in Quo Warranto", and concluded with a prayer for a "Writ of Quo Warranto", the character of relief would still have been determined from the nature of the facts stated, and the facts stated in the petition herein are of the very character of facts upon which an action in quo warranto may be maintained, hence the court had jurisdiction to first determine the legal right and then grant such equitable relief as was necessary to protect and enforce the legal right so determined. The question then, is whether the court erred in its judgment as to the legal right.

This brings us to the second proposition and to the direct question, viz.: Whether under our constitutional system of government the judiciary can limit or interfere

with the chief executive in the exercise of powers pertaining purely to the functioning of the executive department.

As to the powers of the Legislature in this regard, it is unnecessary, perhaps improper to say, but is proper to say that in the absence of express authority of law so to do, the courts will not cross the confines of judicial province and interfere with the exercise of executive powers nor with the executive's sense of his duties and responsibilities.

The exact question presented here is whether the chief executive has power under the law to remove an appointee from an appointive position in a branch of the executive department. This question having been cast upon the court, it must be determined by the law, if there be any law, or be left as it stood at the beginning, if there be no law, for in the absence of law, the courts have as little power to direct the Governor in the discharge of executive duties as the Governor has to direct the court in the discharge of judicial duties. In the absence of law, neither shall interfere with the functioning of the other. To attempt to do so would be to strip the gear, as it were, and ruin the machinery of government; but if there be a law and a properly presented controversy as to its meaning, it then becomes the duty and proper province of the judiciary to interpret such law and declare its meaning. The executive will then be guided by the court's interpretation of the law and will execute the court's mandates. On the other hand, coming directly to the executive acts involved, if there be no law which prohibits the removal of an appointee from an appointive position in the executive department, nor any law prescribing the manner of removal, then this court is powerless to make a law by interpolation, arbitrary interpretation or otherwise, which purports to do that which the law does not; and should it assume to do so, should it assume in the absence of authoritative law to control and direct the manner in which the Governor must exercise his executive power, the Governor would not be bound to obey and the court would be powerless to enforce its orders. Article 4 of the Constitution creates the governing power of the state and defines the sphere of each, to wit:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: the legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

Article 5 of the Constitution defines the legislative powers and limitation. Article 6, Id., creates and enumerates the various co-ordinate branches of the executive department and prescribes the duties and powers of each.

Section 2 of article 6 provides:

"The supreme executive power shall be vested in a chief magistrate, who shall be styled "The Governor of the State of Oklahoma."

Article 7, Id., creates and defines the judicial department and prescribes its duties and powers.

These three departments constitute the governmental forces of the state. They constitute the three great master wheels in the machinery of state government. Each wheel is given its proper axis, and under the injunctive provisions of article 4, supra, each must revolve within its own orbit—"they shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others".

The executive department, it will be observed, comprehends and includes several separate and distinct departments created and named by section 1, art. 6, of the Constitution, to wit: a Governor, Lieutenant-Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, Chief Mine Inspector, Commissioner of Labor, Commissioner of Charities and Corrections, Commissioner of Insurance. each of which is given certain specified powers and charged with certain specified duties, and while each must operate within the general comprehensive sphere of the executive department, with the Governor as chief executive, yet each is endowed with a limited independence and held directly responsible to the electorate for the discharge of its specified duties. But the Banking Department is not one of this class; it is a department within the distinctive sphere specially prescribed to the Governor, such as the Board of Affairs. The Bank Commissioner is made appointive by the Governor and removable by the Governor only, and is not directly responsible to the sovereignty for the faithful discharge of his duties. It is the Governor himself who by law is made directly responsible to the sovereignty for the faithful discharge of the Bank Commissioner's duties, and it may be appropriate in this con-

nection to observe that the Banking Department was not created by the Constitution, nor was the Bank Commissioner created by the Constitution, as has been assumed and argued by counsel. Section 1, art. 14, of the Constitution provides:

"General laws shall be enacted by the Legislature providing for the creation of a Banking Department, to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate, with sufficient power and authority to regulate and control all state banks, loan, trust and guaranty companies, under laws which shall provide for the protection of depositors and individual stockholders."

The foregoing section of the Constitution does not create, but merely authorizes and directs the Legislature to create, a Banking Department. It merely gives the Legislature authority to do so and directs it to do so, an authority which, in the absence of prohibitive limitation, the Legislature would have already had, had it chosen to exercise it, and a direction which the Legislature could not be forced to obey if it saw fit not to do so. At any rate the Banking Department was created by the Legislature and the Bank Commissioner was made appointive and removable by the Governor by legislative act. A brief review of the various legislative acts relating to the subject may throw some beneficial light upon the point under consideration.

The first act of the State Legislature relating to the subject was House Bill No. 11 a, approved December 17, 1907, Sess. Laws. 1907-8, 145, which formally created the State Banking Board, consisting of the Governor, Lieutenant Governor, President of State Board of Agriculture, State Treasurer, and State Auditor, vested such board with certain powers and charged it with certain duties, and also established a depositors' guaranty fund, and vested the said State Banking Board with authority to make assessments against state banks for the maintenance of such guaranty fund. But while this act created the State Banking Board and authorized such board to make assessments for the maintenance of a depositors' guaranty fund, and while it seems to have assumed the existence of a Bank Commissioner, and makes reference to his powers and provision for his duties yet this act did not formally create the office of Bank Commissioner, nor formally provide for his appointment. However, as a matter of governmental history within judicial cognizance, a Bank Commissioner had been formally appointed and commissioned by the Governor 31 days previous to the approval of said House Bill No. 11a. The Honorable H. M. Smock was appointed as Bank Commissioner by the Governor, the Honorable C. N. Haskell, November 16, 1907, while the act creating the State Banking Board did not become effective until December 17, 1907, said appointment having been made under authority of a territorial statute. The next act of the State Legislature relating to the subject was House Bill 333, Sess. Laws 1907-8, 152, approved February 12, 1908, amendatory of section 1, chap. 4, territorial S. L. 1899, and sec. 4 of said H. B. No. 11a, S. L. 1907-8. The territorial Legislature, by the act approved March 10, 1899, had authorized the appointment of a territorial Bank Commissioner by the Governor.

The next legislation upon the subject was H. B. 615, approved May 26, 1908, Sess. Laws 1907-8, 125, entitled "An act relating to banks and banking and declaring an emergency." This act repealed both House Bill No. 11a and House Bill 333, and superseded all former laws relating to banks and banking, in so far as they pertained to the depositors' guaranty fund; however, it retained and constituted the Governor, Lieutenant Governor, President of State Board of Agriculture, State Treasurer, and State Auditor as the State Banking Board, and gave such board control of the subject of banks and banking, and the depositors' guaranty fund, and gave express authority to the Governor, by and with the consent of the Senate, to appoint a Bank Commissioner, and this is the first express authority for such an officer as "Bank Commissioner", with the sphere of duties and powers imposed upon the Bank Commissioner of this state. There were other subsequent acts relating to the subject of banks, banking, trust companies, etc., but none directly affected the question involved in this case until the passage of Senate Bill No. 1, approved February 25, 1911, which changed the State Banking Board and created a new board, consisting of the Governor and two members to be appointed by the Governor. It also created positions for twelve assistants to the Bank Commissioner, and provided for their appointment by the Bank Commissioner subject to the Governor's approval, thereby placing the entire department more completely within the Governor's special sphere of executive duties, powers, and responsibilities.

The next legislation upon the subject was Senate Bill 231, Sess. Laws 1913, 23, amen-

datory of certain previous acts. Section 5 of this act is still in force (section 4172. Comp. Stats. 1921) and is as follows:

"The Bank Commissioner and the members of the Banking Board shall be subject to removal by the Governor for cause; two-thirds of the representatives of the state banks, expressed in such a manner as they may determine, shall have the authority to make recommendations to the Governor in exercising the power of removal. and due consideration shall be given by the Governor to the recommendation of the majority of said representatives of state banks in ascertaining the grounds for removal of the Bank Commissioner and the members of the Banking Board."

What the Legislature has said in the foregoing section is unambiguous and clear. The intent is obvious from its plain language—"the Bank Commissioner and the members of the Banking Board shall be subject to removal by the Governor for cause"; there can be no justifiable mistaking of the above language. It says but one thing, it implies but one thing, viz.: "shall be subject to removal by the Governor"— not by the courts.

But let us observe the additional light which is shed upon the legislative intent by the latter clause in the section, to wit, the words, "the Governor in exercising the power of removal", and the further words, "due consideration shall be given by the Governor," * * * "in ascertaining the grounds for removal of the Bank Commissioner and the members of the Banking Board." This section gives express, specific authority to the Governor to remove the Bank Commissioner for cause. True, it authorizes representatives of state banks to make recommendations and requires the Governor to give same due consideration, but does not require him, does not make it mandatory upon him, to follow such recommendations. Such representatives might recommend a removal and the Governor decline to do so, or recommend the retention of a commissioner and the Governor decline to follow the recommendation. The statute merely says, "due consideration shall be given by the Governor to the recommendations". For what purpose? Answer: "Ascertaining the grounds for removal." One power of removal is given, one person is given authority to exercise such power, and one person, the Governor, is given power to determine the grounds for removal, the cause for removal. In the light of the foregoing section, can it be said in good faith that the language means that the courts shall exercise the power of removal, or de-

termine the cause for removal? Can the courts in good conscience say this language means that they shall exercise the power given to the Governor by the foregoing section? We cannot, nor will we, say that should the courts assume to exercise such power, it would be a valid exercise of judicial power. The language of the section makes it both clear and emphatic as to who is vested with "the power of removal", who shall exercise such power, and who shall determine the sufficiency of "cause for removal".

The language of the statute itself should be an all sufficient answer to the contention that the words "for cause", used in the first portion of the section, implies judicial determination and that it should be left to the courts to determine the sufficiency of the cause. But counsel for defendant in error persist in this contention and argue same at great length, and cite a number of authorities purporting to sustain same. Such contention would be readily sustained if the statute so provided, but it does not, and in the face of the plain language of the statute and obvious intent of the Legislature, such contention is without foundation or merit.

Section 4176, Comp. Stat. 1921, which is section 10 of the act approved March 16, 1913, Sess. Laws 1913, 32, and which is a part of the same act of which said section 5, supra, is a part, is cited in support of the contention for a judicial trial. The section is as follows:

"The Banking Board shall cause one of the examiners to visit each bank, doing business under the provisions of this act, at least twice each year, and oftener if the commissioner deems it necessary. Upon such examination the examiner shall make a careful, thorough and complete examination into the condition and affairs of such bank, and for such purposes each examiner is hereby empowered to administer oaths and to examine under oath any officer, director, employe, agent, clerk, stockholder, depositor, or borrower of such bank. They shall make complete detailed reports of all their examinations and findings, and shall make such recommendations to the commissioner as in their judgment may be necessary for the better management or to better the condition, of any bank examined by them. Such reports shall be transmitted to the commissioner as soon as made up, and shall be kept on file in the commissioner's office. Any commissioner, assistant commissioner, secretary, examiner, or employe of the Banking Department, who shall be guilty of any corruption or misconduct in office, or who shall accept any gratuity,

reward, or present from any bank, or bank officer, or shall take or accept any fee or compensation from any bank or banker during his term of office, shall be deemed guilty of corruption in office, and, upon conviction, shall be punished by imprisonment in the state penitentiary for a term of not less than one, nor more than ten years; and any commissioner, secretary, examiner or employe of the Banking Department, who shall neglect to perform any duty, or who shall prove to be incompetent, negligent, or insubordinate, may be summarily removed by the State Banking Board."

The above statute, we assume, is cited because it provides for a judicial trial, conviction, and punishment for the offenses therein named, and counsel contend that the Governor is without authority to exercise the judicial power of determining the guilt or innocence of a party accused of any of the enumerated offenses. Well, as a matter of course, he is without such authority; as a matter of common sense the Governor could not try a man for the offenses therein mentioned,—they are offenses against the law. It is not offenses against the Governor's sense of duty, nor offenses against his executive or administrative policies, which the above statute was designed to meet, but it is **crimes against the law itself.** As a matter of course, offenses against the law must be determined and adjudged by the agencies which the law has created for such purpose, viz., the church, the judiciary; but there is an essential distinction between an offense merely against the Governor's executive rules or policies and a crime against the law itself; there is an intrinsic difference between a violation of the Governor's conception of executive duties and a violation of the law itself. An appointee in a branch of the executive department might violate the chief executive's individual sense of duty or responsibility, and yet not violate the law, or, on the other hand, he might violate the law and yet not offend against the executive policy. The Legislature has recognized this distinction and wisely provided for their determination and adjustment and wisely provided who shall determine them. Section 4172, Comp. Stat. 1921, makes provision for determination of one character of offenses, viz., those against the Governor's policies or against his sense of duties, or against his individual conception of executive responsibilities. The other, secton 4176, supra, makes provision for offense against the law. In the very nature of our governmental system, offense against the law must be determined and adjudged by the courts. It is their proper province

and duty, but with offenses against rules or policies pertaining to the Governor's special sphere of executive duties, the judiciary, in the absence of express power, has nothing to do. In the absence of authoritative law, the judiciary is without jurisdiction to direct the Governor in the management of executive affairs and powerless to enforce its mandates should it assume to do so. Nor does the latter portion of section 4176, supra, detract from the powers which section 4172, supra, gives to the Governor. It provides for a determination of a different character of offenses, and the two sections, viewed together, serve only to show more clearly the legislative recognition of the distinction between the two character of offenses provided for. Counsel lay stress upon the latter provision of section 4176, and quote the following portion thereof, to wit:

"And any commissioner, secretary, examiner or employe of the Banking Department, who shall neglect to perform any duty, or who shall prove to be incompetent, negligent, or insubordinate, may be summarily removed by the State Banking Board."

But the above provision has the reverse significance to that for which counsel contend. It signifies that where a subordinate has been adjudged guilty of an offense against the law, the Banking Board may remove him, whether it shall suit the Governor or not. The board is given power to remove such subordinates, and it even provides that for the neglect of duty or incompetency or insubordination to the rules of the department the board may remove said Bank Commissioner or other subordinate officers without calling upon the Governor for executive action, and provides that such officers may be **summarily removed** for the things mentioned without taking the time of the Governor from other matters.

But this provision does not detract from the powers vested in the Governor by section 4172, supra. Said section gives power to the Governor to remove not only the Bank Commissioner, but the entire Banking Board, for cause, and gives him power to determine the cause. Section 4176, supra, gives power to the Banking Board to summarily remove the commissioner or other appointees for the things in said section provided. There is no conflict between the two sections, nor any justifiable grounds for friction. While section 4176 contemplates a judicial trial of offenses against the law, neither section 4172 nor

4176 contemplates a judicial trial of such offenses as only affect some rule, or policy, or judgment, or individual sense of duty and responsibility of the chief executive. It would indeed present a strange anomaly, in a system of government such as ours, with three separate and distinct governmental departments, as provided in article 4 of the Constitution, with the supreme executive power vested in a "Chief Magistrate, styled the Governor of the State of Oklahoma", as provided in section 2, art. 6, of the Constitution, and then give the judiciary the power to prescribe to the chief executive what his policies should be, what his sense of executive duty should be, what degree of responsibility he should feel, and when his conscience should feel clear. So, whatever may have been held by the courts of other states as to their Constitutions and statutes, though they may enlighten, yet they should not control, us in what we should say as to our Constitution and statutes, especially not when to do so would be to veer from the clear intendment of our Constitution and manifest intention of our Legislature.

Some 25 or more decisions from about 16 different states are cited and quoted from by defendant in error on the question of power of removal from office, and how it should be exercised. We have reviewed these decisions and classified them according to the subject-matter before the court, the nature of the offense to be determined, the character of the office under consideration, and the language of the law upon which they were rendered. It would serve no useful purpose to set out an analysis of each decision cited. Some have dealt with subject-matter altogether different from that under consideration here; some have dealt with and determined offenses against the law itself, which in the very nature of our system of government must be determined by the courts; in some the right to an elective office for a specified term was involved, a wholly different proposition to that involved in the removal of an appointee from a nonelective position in a subordinate branch of the executive department. The elective officer is responsible directly to the electorate, he is elected by the voters, and the public has a right in his tenure of office, a right which can be properly determined by the courts only, and the courts have universally and very properly so held. But a different principle is involved in the case of an appointee to an appointive position in a subordinate branch of the special sphere of duties and respon-

sibilities of the chief executive. An appointee to such a position is selected by the chief executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilities to the public and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the chief executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the chief executive and, in the absence of express authority, the judiciary has nothing to do with the chief executive's judgment, conscience, sense of duty or responsibilities.

We find, also, that many of the decisions cited are based upon different provisions of law from those which govern in the case at bar, and are therefore not in point. Defendant in error also quotes from 12 C. J. 899, as follows:

"The power to remove from office is not under our system of government to be implied as a part of the inherent power of the Governor or other executive officer. Such power of removal may or may not be vested by the Constitution in the executive. And in the case of officers created by the Legislature the power of removal may be vested by statute in the Governor, or in some other officers or department of the government. But in the absence of such provision the power of removal is not to be exercised by the Governor."

And from 29 Cyc. 1371, as follows:

"Furthermore it is the universal rule that where the duration of an office is not prescribed by law the power to remove is an incident of the power to appoint."

And from 22 R. C. L. 562, as follows:

"When the term or tenure of a public officer is not fixed by law, the general rule is that the power of removal is incident to the power to appoint. The tenure not having been declared by law, the office is held during the pleasure of the authority making the appointment; hence in the absence of all constitutional or statutory provisions as to the removal of public officers the power of removal is considered as an incident to the power of appointment. * * * But the power of removal is not incident to the power of appointment where the extent of the term of office is fixed by statute."

But neither of the above authorities, nor do all of them taken together, warrant the conclusion that the phrase "for cause" means or implies a judicial trial of the question of cause. The utmost that may

be deduced from such authorities is that, in the absence of law to the contrary, the power of removal is incident to the power to appoint.

And from a more exhaustive review of the entire context of the subject-matter we find that 12 C. J., supra, has the following to say:

"The courts are without jurisdiction to interfere with or to control an executive officer in the exercise of any power or the performance of any duty of an executive or administrative character, in which the Constitution contemplates the exercise of discretion of such officer. In the exercise of executive powers judicial discretion must not be substituted for executive discretion." Section 393, p. 894.

Section 394, Id.:

"The Governor, as the chief executive officer of a state, is vested with the largest measure of executive discretion, in the exercise of which he may not be controlled by the courts."

Section 399, Id.:

"Executive officers, intrusted by the Constitution or by statute with the power of appointment to office, are not subject to judicial control in the exercise of their discretion in selecting appointees."

Section 401, Id.:

"The function of the executive department of a government is to administer and enforce the laws. And it is the right of the executive officers named in the Constitution to exercise all the powers properly belonging to the executive department. * * * Historically, the office of Governor was the prototype of the presidency, and it has been said, 'The chief magistrate or Governor of a state bears the same relation to the state that the President does to the United States.'"

Section 402, Id.:

"The power to appoint to an office is intrinsically an executive function, not a judicial act."

The last above quotation from 12 C. J. is from the same section from which defendant in error quotes, and the same section uses the following language, which immediately follows the quotation by defendant in error, to wit:

"Although a statute authorizing a removal by the Governor or other executive officer for cause contemplates an investigation by such officer of the grounds of complaint, and the formation of a judgment by him, it does not constitute an encroachment on the judiciary, since the judgment and discretion to be exercised is of an ex-

ecutive, and not of a judicial nature". 12 C. J. 899.

Also the following appears in note to the above authority from an opinion in McMaster v. Herald (Kan.) 42 Pac. 697.

"Many executive acts involve the exercise of judgment and discretion, including the power to hear and determine, and yet the acts and the power cannot be held to be judicial. In order properly to exercise an executive function it is often a requisite preliminary to hear evidence to guide and direct the judgment of the executive as to the course to pursue, and it is not necessary under our Constitution to refer all such questions to the courts."

Also, in 29 Cyc., supra, cited by defendant in error, on page 1370, in the same paragraph from which defendant in error quotes, we have the following language, to wit:

"Sometimes the attempt has been made to treat the power to remove as a judicial power."

Id., page 1371:

"An appointment consists in the choice by the appointing power of the person appointed. The exercise of the appointing power involves the exercise of discretion, and must be accompanied by the intention on the part of the appointing officer to place the person of his choice in the position to be filled."

Also, additional light is thrown upon the quotation of defendant in error from 22 R. C. L. 562, page 573, to wit:

"A court of equity, unless its jurisdiction has been enlarged by statute, has no general jurisdiction over the removal of public officers. And where the power of removal is conferred on an official or board, the courts cannot interfere or prevent a removal."

On page 575, Id., is the following:

"But when a statute creating a public office invests the Governor with power to remove the incumbent for cause, without restriction, except that the removal must not be made for political reasons, and that the cause therefor must be stated in writing, the Governor is not required, as a prerequisite to removal, to institute an investigation in the nature of a judicial or quasijudicial inquiry. No mode of inquiry being prescribed, he is at liberty to adopt such mode as to him shall seem proper, without interference from the courts."

Thus it is clear that, in the absence of authority vested in it by law, the judiciary cannot interfere with the policy, judgment, or discretion of the chief executive in mat-

ters pertaining to the functioning of the executive department.

It is unnecessary to decide this case upon the doctrine that the power to remove is an incident to the power to appoint, although the federal courts have uniformly adhered to such doctrine, and, in our opinion, the far better reasoned cases from the state courts have concurred in the same doctrine; but it is unnecessary to resort to that doctrine in a determination of this case; the statute has determined it. Neither is it necessary to determine the effect of statutory provisions which fix the term of office for a definite period of years, for the very provision of statute authorizing a removal for cause precludes the right to hold for the entire term regardless of cause.

Neither is it necessary to analyze the decisions involving the right of removal from elective offices. The direct question we have before us is the right of the Governor to remove an appointee from an appointive position in a subordinate department of the Governor's special sphere of responsibilities. The Legislature has created the department in question, created the appointive position in question, given the Governor the appointing power, and authorized the Governor to remove the appointee for cause, and furthermore has authorized the Governor to determine the sufficiency of cause. This takes it away from the courts. For the courts to attempt to interfere would be to attempt to exercise an authority which the law has expressly vested in another department of government.

It follows, therefore, that the learned trial judge erred in his judgment as to the legal right presented to him, the legal right to the office in question. The Governor having legal authority to do the things complained of, the plaintiff had no legal ground for complaint and failed to state a cause of action. Hence, in contemplation of our Code of Procedure, the trial court erred in overruling the demurrer to plaintiff's petition. The judgment is reversed, with directions to sustain the demurrer, dissolve the injunction granted, and dismiss the action at plaintiff's cost.

JOHNSON, C. J., and McNEILL, KANE, and BRANSON, JJ., concur. KENNAMER, NICHOLSON, and COCHRAN, JJ., dissent.

KENNAMER, J. (dissenting). I cannot concur in the majority opinion, as I do not believe the right conclusion has been reached, and believe that it is in conflict with controlling constitutional and statutory provisions, and the great weight of the authorities.

Section 1, article 14, of the Constitution, and section 4225, Comp. Stat. 1921, provide:

"The Governor shall appoint, by and with the advice and consent of the Senate, a Bank Commissioner, who shall hold office for the term of four years, and until his successor is appointed and qualified. * * *"

Section 4172, Comp. Stat. 1921, provides:

"The Bank Commissioner and the members of the Banking Board shall be subject to removal by the Governor for cause. * * *"

Section 4176, Comp. Stat. 1921, authorizes the Banking Board to remove any commissioner, assistant commissioner, or any employe of the Banking Department, who shall be guilty of any misconduct in office or for incompetency. The order of removal involved in this case is not sought to be justified upon the ground "for cause."

It is quite plain from a consideration of the constitutional statutory provisions relating to the office of Bank Commissioner that the term of office is fixed at four years; that the framers of the Constitution and the Legislature, in enacting laws, as directed by section 1, article 14, of the Constitution, supra, in order to safeguard the interest of the people in obtaining the services of an experienced and competent person to fill the office of Bank Commissioner, only authorized the Governor to appoint such commissioner by and with the consent of the highest legislative branch of the government, the Senate, and required such commissioner to be appointed for a term of four years. Evidently it was intended to protect such commissioner from being summarily removed in an arbitrary and capricious manner by limiting the power of the Governor to remove only for cause, and, in providing for the removal of the commissioner by the Banking Board, specifically enumerated the grounds upon which such commissioner might be removed. It is a most serious objection to the conclusion reached in the majority opinion that all of these constitutional and statutory safeguards are by judicial construction stricken down and the legal effect of the opinion is to make the Bank Commissioner subject to removal at the pleasure of the Governor, instead of for cause. This conclusion is contrary to the great weight of authority, and the better rule, founded upon reason, is that a public officer holding an office for a fixed term, subject to removal for cause, cannot be removed without

notice and a hearing. He is entitled to such notice in order that he may have an opportunity to defend and the fact that the statute fails to expressly provide for such notice does not affect this rule. 22 R. C. L., secs. 266, 282 and 286; Barrett v. Duff, (Kan.) 217 Pac. 918; Christy v. Kingfisher, 13 Okla. 585, 76 Pac. 135; Jacques v. Litle (Kan.) 33 Pac. 106; Territory v. Ashenfelter (N. M.) 12 Pac. 879; State v. Grant (Wyo.) 82 Pac. 2; State v. City of St. Louis (Mo.) 1 S. W. 757; Benson v. People (Colo.) 50 Pac. 212; Beggs v. McBridge (Ore.) 21 Pac. 878; Haggerty v. Shedd (N. H.) 74 Atl. 1055; State v. Hewitt, 8 S. D. 187, 44 Am. St. Rep. 788; Field v. Commonwealth, 32 Pa. St. 478; People v. Douglass (N. Y.) 87 N. E. 1070.

In the recent case of Barrett v. Duff, supra, the court held:

"Where the term of office is fixed by statute the power of removal does not exist in the executive so far as provided by statute. The executive power to appoint to office does not include the power to remove unless the tenure of office has not been declared by law."

The Supreme Court of Massachusetts in the case of Bailey v. Board, 135 N. E. 877, held:

"Where the power is given to remove a public officer for cause, a removal is not authorized without notice and hearing, but where the officer is appointed during pleasure or where the power of removal is discretionary, it may be exercised without notice or hearing."

The Supreme Court of Nebraska in the case of State v. Smith, 52 N. W. 700, announces the rule as follows:

"Where the incumbent is elected or appointed for a definite term and is removable only for specified cause, the power of removal cannot be exercised until there have been preferred against him specific charges of which he shall have notice and an opportunity afforded him to be heard in his defense."

The Supreme Court of Ohio in the case of State v. Hoglan, 60 N. E. 627, held:

"When a public officer may be removed for specified causes, such facts must be stated as in judgment of law constitute the cause relied on, and an opportunity to be heard before he can be legally removed by the mayor."

This rule is based upon sound reasoning, and gives to the statute requiring cause some meaning and a useful field of operation. Had it been the intention of the framers of the Constitution and the Legislature to have made the term of office of the Bank Commissioner one at the pleasure of the Governor of the state, undoubtedly some language would have been used evidencing such intention.

The text-writers and authorities, almost with unanimity, hold that the phrase "for cause," as is used in such statutes, means "legal cause", and manifests an intention on the part of the Legislature to protect an appointive officer with a fixed term from being arbitrarily and capriciously removed by the removing power. 22 R. C. L. p. 571; State v. City of Duluth (Minn.) 55 N. W. 188; Board v. Williams (Md.) 53 Atl. 923; McCulley v. State (Tenn.) 53 S. W. 134; Height v. Love, 39 N. J. Law, 14; People v. Fire Commissioners, 7 N. Y. 445; State v. McGarry, 21 Wis. 502; Ayres v. Hatch (Mass.) 56 N. E. 612.

The Supreme Court of Maryland in the case of Board v. Williams, supra, held:

"The phrase 'for cause' does not mean the arbitrary will of the appointing power, for that might be the outgrowth of mere whim, caprice, prejudice, or passion, which would in reality be no cause at all; but the phrase 'for cause' must mean some cause affecting or concerning the ability or fitness of the incumbent to perform the duty imposed upon him. Cause must be one affecting the officers' capacity or fitness for the office."

Of course, it may be observed here that the plaintiff in error defended this action in the trial court upon the theory that it was an action to try title to office and for that reason the defendant in error, present incumbent of the office of Bank Commissioner, could not maintain the action. It is quite obvious that counsel for the plaintiff in error could, no doubt, better assert this contention, in view of the well-established rules of law supported by the above authorities herein cited. Such contention is more reasonable under the admitted facts than that the plaintiff in error has legal title to the office in question, and that such could by him be established in a proper action. But in the case of Brady et al. v. Sweetland et al., 13 Kan. 37, in an opinion by Mr. Justice Valentine, the court held that a party claiming an office cannot take forcible possession of it, but he must prosecute his action of quo warranto in order to determine his right to said office, and that a party in possession of an office is entitled to an injunction against a party attempting to take forcible possession or usurp the duties of such office. The court approved the rule announced in this case

in the case of Walton v. Donnelly, 83 Okla. 233, 201 Pac. 367.

The rule is that a de facto officer in possession may protect that possession against the interference of a stranger to the office, before he has established his title thereto, and injunction will lie at the instance of such de facto officer to prevent forcible ouster, and courts of equity have jurisdiction in such cases. 29 Cyc. 1416; City of Huntington v. Cast et al. (Ind.) 48 N. E. 1025; Guillotte v. Poiency (La.) 5 L. R. A. 403; Brady v. Sweetland (Kan.) 13 Kan. 37 (Old Series 41); Reemelin et al. v. Mosby (Ohio) 26 N. E. 717; Armijo v. Baca (N. M.) 6 Pac. 398; State ex rel. Fairbanks v. Superior Court of Snohomish County (Wash.) 48 Pac. 741; Appeal of Town Council et al. (Pa.) 15 Atl. 730; Carson v. Durant (Ind.) 49 N. E. 1047; Poyntz et al. v. Shackelford (Ky. App.) 54 S. W. 855; Pomeroy's Equitable Remedies (1st Ed.) vol. 5, sec. 355; Rhodes v. Driver (Ark.) 65 S. W. 106; Ekern v. McGovern (Wis.) 142 N. W. 595. This rule, however, does not apply to elective officers whose terms have expired according to the law prescribing the term of such offices. This is on the ground of public policy. But it is quite obvious that there is a distinction to be drawn where the incumbent of an office seeks to enjoin the holder of a certificate issued pursuant to a general election held according to law, and the instant case, for in such cases the term of office has expired by operation of law. But in the instant case, although the defendant in error was issued a commission for four years and confirmed by the Senate, and the law provides that he may hold the office for said term, unless removed for cause, it appears after he has served only a few months of his term, without any notice to him of any unfaithfulness in the discharge of his public duties, he is discharged in the same manner that the superintendent of a factory would discharge one of his employes.

It is clear from the allegations of the petition for injunction that when Strain requested the Governor to advise him of the real reasons for his abrupt removal, no suggestion came from the Governor that Strain as Bank Commissioner had in any way failed to faithfully and honestly perform the duties of the office, but, on the other hand, the Governor indicated he was displeased at the action of Strain in refusing to allow one of the Governor's friends an attorney fee of $25,000 in connection with the liquidation of a failed bank. No contention was made by the Governor that the fee was a just debt, but it was suggested, "We must take care of our friends." These allegations of the petition by the demurrer are admitted to be true.

It is apparent from the admitted facts that Strain was not removed for any legal cause. The majority opinion in legal effect converts the term of office of Bank Commissioner to one at the pleasure of the Governor, instead of for four years, as provided by law.

The majority opinion seeks to justify such conclusion upon the theory that the chief executive of the state is not subject to the laws of the state in performing his executive duties. This is a most dangerous doctrine, and is not supported in reason nor by authority.

This court in the recent opinion of Peebly v. Childers, State Auditor, No. 14569, 95 Okla. 40, 217 Pac. 1049, held that the Governor of this state, in approving or disapproving bills passed by both houses of the Legislature, acts in a legislative capacity, and can exercise only the granted power, and if he exercises such power in a different mode than authorized by the Constitution, his act will be wholly ineffectual for any and every purpose, and amounts to no more than a futile gesture. So in the instant case the Governor in removing the Bank Commissioner performs an act in the nature of a quasi judicial act, and if he acts without the law or in any manner unauthorized by law, his act is void. The validity of his act presents a judicial question of which the courts of the state have jurisdiction. In 29 Cyc. 1410, the rule is stated:

"The determination of what is cause under such a provision may be reviewed by the courts."

See State v. Hoglan, 64 Ohio St. 532, 60 N. E. 627.

In the case of Ekern v. McGovern, supra, the court held:

"When a judicial question arises, it is within the competency of the judicial department to deal therewith, not stopping, necessarily, to consider who are the parties. It is not bound to desist because of the alleged wrongdoer being the Governor or a person acting by his direction.

"The basic idea of the state Constitution is that this 'is a popular representative government, the officers being mere agents, not rulers of the people—one where no man is so high as to be above the Constitution, and no one so low as to be beneath its protection.'"

The doctrine of this case is sound, and I fully agree with the rules therein announced. The law is supreme, and not the Governor, and when his acts are performed in violation of the plain provisions of the statute, and when such acts invade the rights of any citizen, such citizen is entitled to redress in the courts.

For the reason herein stated, I dissent.