OSCN Found Document:OKLAHOMA DEPT. OF CORRECTIONS v. BYRD

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 OKLAHOMA DEPT. OF CORRECTIONS v. BYRD
2023 OK 97
Case Number: 119908 (cons. w/ 119907)
Decided: 10/10/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 97, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

OKLAHOMA DEPARTMENT OF CORRECTIONS, Petitioner/Appellant,
v.
CINDY BYRD, in her official capacity as State Auditor and Inspector of the State of Oklahoma, and BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA, OKLAHOMA, and TULSA COUNTY CRIMINAL JUSTICE AUTHORITY, Respondents/Appellees.

ON CERTIORARI TO COURT OF CIVIL APPEALS, DIVISION III

HONORABLE DON ANDREWS, TRIAL JUDGE

¶0 On request of Tulsa County, the Oklahoma State Auditor and Inspector calculated the jail's "actual daily cost" to house Department of Corrections inmates pursuant to 57 O.S. § 38. The State Auditor's "actual daily cost" calculation included the jail's consumable costs and fixed costs. The Oklahoma Department of Corrections filed suit against the State Auditor and Inspector and Tulsa County, arguing "actual daily cost" is limited to consumable costs and excludes fixed costs. The district court found it lacked subject matter jurisdiction to hear the case but found the State Auditor's calculation was rational. The Court of Civil Appeals found the district court had limited jurisdiction to hear the dispute and determined "actual daily cost" includes both consumable costs and fixed costs. The Court of Civil Appeals further determined the Oklahoma Administrative Procedure Act, and the doctrine of issue preclusion did not bar judicial review. We hold on certiorari review that issue preclusion is not applicable, the separation of powers clause does not bar this Court from interpreting the meaning of "actual daily cost," and "actual daily cost" includes any cost directly attributable to housing a DOC inmate.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

Craig A. Fitzgerald, Timothy J. Sullivan, Justin A. Lollman, GABLEGOTWALS, Tulsa, Oklahoma for Petitioner/Appellant.

V. Glenn Coffee, Lexie P. Norwood, and Denise Lawson, GLENN COFFEE & ASSOCIATES, PLLC, Oklahoma City, Oklahoma for Respondent/Appellee Cindy Byrd, in her official capacity as State Auditor and Inspector of the State of Oklahoma.

David B. Donchin, DURBIN, LARIMORE & BIALICK, Oklahoma City, Oklahoma for Respondent/Appellee Cindy Byrd in her official capacity as State Auditor and Inspector of the State of Oklahoma.

Douglas A. Wilson, Assistant District Attorney, Tulsa County District Attorney's Office, Tulsa, Oklahoma for Respondent/Appellee Board of County Commissioners of the County of Tulsa.

Stephen A. Kunzweiler, Tulsa County District Attorney, Tulsa County District Attorney's Office, Tulsa, Oklahoma for Respondent/Appellee Board of County Commissioners of the County of Tulsa.

Sharon K. Weaver, RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS, P.C., Tulsa, Oklahoma for Respondents/Appellees Board of County Commissioners of the County of Tulsa and Tulsa County Criminal Justice Authority.

OPINION

ROWE, V.C.J.:

¶1 Oklahoma counties are required to house state prison inmates in certain instances.[1] In turn, Oklahoma law requires the state to reimburse counties Twenty-seven Dollars ($27.00) ("$27") per day per state inmate for the cost of housing, unless the "actual daily cost" exceeds $27. The primary issue before us concerns the meaning of "actual daily cost" as provided in 57 O.S. 2017, § 38.[2]

BACKGROUND

¶2 In 2011, the Honorable Josh Brecheen asked the Attorney General whether "Oklahoma counties [are] required to accept payment from the Department of Corrections at the rate set out in Section 38 of Title 57 of the laws of Oklahoma?"[3] The Attorney General opined that "the Department of Corrections must pay to counties an amount not exceeding a per diem of twenty-seven dollars ($27.00), unless that per diem amount is not sufficient to fully reimburse a county's cost of housing a prisoner. In such instances, the requirement in Section 1 of Article XXI of the Oklahoma Constitution that the state support penal institutions would require the state to fully reimburse the county."[4] The Attorney General did not opine on whether $27 was sufficient to cover the cost of housing a DOC inmate, finding the question was beyond the scope of an Attorney General opinion.[5]

¶3 In light of the Attorney General's opinion, the Board of County Commissioners of Bryan County challenged § 38's constitutionality in district court. The district court concluded that when a county's cost exceeds $27, the county "is entitled to reimbursement from the State of Oklahoma in an amount sufficient to fully reimburse the costs of housing incurred by the county for such inmate without being limited by the cap limit provided by 57 O.S. § 38."[6] The DOC appealed the district court's order and the Court of Civil Appeals ("COCA") affirmed. See Bd. of Cnty. Comm'rs of the Cnty. of Bryan v. Oklahoma Dep't of Corrections, 2015 OK CIV APP 86, 362 P.3d 241.[7]

¶4 In light of the Attorney General's 2011 opinion and Board of County Commissioners of the County of Bryan v. Oklahoma Department of Corrections, Tulsa County retained MGT of America, Inc., a nationwide professional services firm specializing in calculating jail costs and rates, to conduct a rate study of the Tulsa County jail. MGT determined Tulsa County's "actual daily cost" for housing, caring for, and feeding inmates was $55.81 per inmate per day.[8] Tulsa County sought reimbursement in the amount of $55.81 but DOC rejected the proposed amount. As a result, the Board of County Commissioners of the County of Tulsa and Tulsa County Criminal Justice Authority (collectively referred hereinafter as "Tulsa County") filed suit against DOC seeking declaratory judgment on the reimbursement Tulsa County claimed DOC owed for housing state inmates.[9]

¶5 During the pendency of the suit, the Legislature amended 57 O.S. 2015, § 38, effective November 1, 2017, which remains in effect today. The amendment provided a procedure for when a county and DOC disagree on the "actual daily cost" of housing a DOC inmate:

The Department of Corrections shall reimburse any county which is required to retain an inmate pursuant to subsection D E of Section 37 of this title in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention, unless the actual daily cost as determined by the Department of Corrections Daily Rate as defined in this section, exceeds Twenty-seven Dollars ($27.00). If the actual daily cost as determined by the Department of Corrections Daily Rate exceeds Twenty-seven Dollars ($27.00), the county shall notify the Department of Corrections of the actual daily cost no later than September 30. If the county's actual daily cost is accepted by the Department that shall be the reimbursement rate for the county beginning the next fiscal year. If the Department rejects the county's actual daily cost application, then the actual daily cost reimbursement shall be determined by the State Auditor and shall be imposed beginning the next fiscal year.

2017 Okla. Sess. Law Serv. Ch. 260 (H.B. 1483) (omitted text in strikethrough, new text in underline).

¶6 Despite § 38's amendment, Tulsa County did not seek a reimbursement determination from the State Auditor and Inspector ("State Auditor") and chose to maintain its claims against DOC in district court. DOC moved for Partial Summary Judgment asking the court to find "that DOC does not have to reimburse Tulsa County for the fixed costs of operating the Tulsa County jail"[10] pursuant to 57 O.S. 2017, § 38, arguing its reimbursement obligation was limited to "actual, incremental costs"[11] attributable to the presence of a DOC inmate.

¶7 Judge Susan Stallings granted DOC's Motion for Partial Summary Judgment, ruling that Tulsa County's "reimbursable costs cannot include [] fixed costs, . . . but are instead limited to consumables such as the actual costs of feeding, housing, clothing, providing medical treatment, attributable to the presence of Department of Corrections inmates in the Tulsa County jail in excess of the $27 statutory per diem rate, as proven at trial."[12] The order was certified as an appealable interlocutory order pursuant to 12 O.S. § 952(3). We denied Tulsa County's request for certiorari review of Judge Stallings' ruling.

¶8 Following the denial of certiorari review, Tulsa County sent a letter to the State Auditor, requesting that she determine the "actual daily cost" of a DOC inmate pursuant to § 38. After the State Auditor agreed to determine the "actual daily cost" reimbursement rate for a DOC inmate, Tulsa County voluntarily dismissed its case against DOC.

¶9 After learning the State Auditor agreed to determine the "actual daily cost," representatives from DOC requested a meeting with the State Auditor to discuss Tulsa County's request for a rate determination. DOC representatives noted that Tulsa County's request was procedurally improper and requested that if the State Auditor determines a reimbursement rate, that she do so according to Judge Stallings' Order. The State Auditor notified Tulsa County that the "actual daily cost" to house a DOC inmate was $63.42.[13]

THE PRESENT LAWSUIT

¶10 On July 28, 2020, DOC filed a Petition for Review, or in the Alternative, Declaratory Judgment or Writ of Mandamus against the State Auditor and Tulsa County in Oklahoma County District Court. The DOC asked the district court to (1) set aside the State Auditor's reimbursement rate determination; (2) remand the matter to the State Auditor with instruction to follow requirements for an individual proceeding under the Oklahoma Administrative Procedure Act ("OAPA") and determine the actual daily cost reimbursement rate pursuant to 57 O.S. § 38 by excluding fixed cost; (3) declare that actual daily costs subject to reimbursement under 57 O.S. § 38 shall be limited to consumables such as the actual cost of feeding, housing, clothing and providing medical treatment attributable to the presence of DOC inmates and shall not include fixed costs; or (4) issue a writ of mandamus directing the State Auditor to determine a reimbursement rate pursuant to 57 O.S. § 38 that includes only Tulsa County's actual cost of consumables attributable to DOC inmates.

¶11 Tulsa County filed a Motion to Dismiss which the district court denied. Following the denial, DOC, the State Auditor, and Tulsa County filed cross-motions for Summary Judgment. DOC argued (1) the State Auditor failed to apply the correct meaning of "actual daily cost" pursuant to 57 O.S. § 38 in calculating Tulsa County's reimbursement rate; (2) the State Auditor failed to comply with the OAPA; and (3) Tulsa County should be precluded from relitigating whether its reimbursable rate under 57 O.S. § 38 includes fixed costs of operating the Tulsa County Jail. In the State Auditor's Motion for Summary Judgment, she argued that granting DOC's motion would violate the separation of powers clause and the district court lacks authority to issue a declaratory judgment or writ of mandamus in favor of DOC. Tulsa County argued the State Auditor properly exercised her authority and discretion as her determination was neither erroneous nor arbitrary; the State Auditor is not bound by a district court case to which she was not a party and that involved a pre-amendment version of § 38; and the State Auditor's determination is not subject to the OAPA.

¶12 The district court granted Tulsa County and the State Auditor's Motion for Summary Judgment, finding the court lacked subject matter jurisdiction "in adjudicating any claim that would require a district court to decide the 'actual daily cost reimbursement.'"[14] In addition, despite finding the district court lacked subject matter jurisdiction, the court concluded the State Auditor's method to determine the "actual daily cost" was rational. The DOC filed its Petition in Error, and the case was assigned to COCA.

¶13 COCA reversed and remanded the district's ruling holding that "the § 38 rate determination is a justiciable matter granting the court with subject matter jurisdiction."[15] COCA determined the district court has limited jurisdiction to hear the dispute because the State Auditor was acting in a quasi-judicial function when she determined the "actual daily cost" pursuant to 57 O.S. § 38. In addition, COCA determined that neither the OAPA nor issue preclusion applied in this case. Lastly, COCA determined "the legislature intended the phrase 'actual daily costs' to include fixed costs"[16] and remanded the case to the district court with instruction to apply its interpretation of "actual daily cost" and determine whether the State Auditor abused her discretion when she determined the reimbursement rate of $63.42.

¶14 Both DOC and the State Auditor sought certiorari review of COCA's opinion. The DOC contends COCA's determination that "actual daily cost" includes fixed costs is incorrect and presents a question of statewide importance. The State Auditor contends COCA erred finding the district court had jurisdiction over the dispute because the State Auditor was exercising her discretionary executive power granted to her by the Legislature and interference by the courts would violate the separation of powers. In addition, the State Auditor argues COCA erred in remanding the case because the district court already made the determination that the State Auditor's calculation of the "actual daily cost" was rational. In turn, Tulsa County contends certiorari review is unwarranted because the requests for review go beyond the merits of the appeal.

STANDARD OF REVIEW

¶15 Summary judgment settles only questions of law. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 11, 160 P.3d 959, 963--64. The standard of review for questions of law is de novo. Id. Where a controversy is resolved by summary judgment, the appellate courts review the entire summary judgment record independently and without deference to a lower court. Id. Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. Under de novo review, we have plenary, independent and nondeferential authority to determine whether the district court erred in its legal ruling. Fanning v. Brown, 2004 OK 7, ¶ 8, 85 P.3d 841, 845. "Statutory construction also presents a question of law. Questions of law are reviewed by a de novo standard." Id.

ANALYSIS

A. Issue Preclusion Is Not Applicable.

¶16 On appeal, DOC contends Judge Stallings' order in CV-2017-684 has preclusive effect over this case. In Board of County Commissioners of the County of Tulsa v. Oklahoma Department of Corrections, No. CV-2017-684 (District Court of Oklahoma County, March 31, 2017) (certiorari denied), Judge Stallings' Order for Summary Judgment held that "actual daily cost" is limited to consumables and excludes fixed costs of the county jail. Tulsa County and the State Auditor contend the doctrine of issue preclusion does not apply because the State Auditor was not a party to the previous case (CV-2017-684). DOC argues it is irrelevant whether the State Auditor was a party to the previous case because the issue preclusive effect of Judge Stallings' interlocutory order applies only to Tulsa County, who along with DOC, are the only real parties in interest here.

¶17 Issue preclusion "is activated when an ultimate issue has been determined by a valid and final judgment--that question cannot be relitigated by [the same] parties, or their privies, to the prior adjudication in any future lawsuit." Carris v. John R. Thomas & Assocs., P.C., 1995 OK 33, ¶ 9, 896 P.2d 522, 527. "Once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." Oklahoma Dep't of Pub. Safety v. McCrady, 2007 OK 39, ¶ 7, 176 P.3d 1194, 1199. The doctrine may not be invoked if the party against whom the earlier decision is interposed did not have a "full and fair opportunity" to litigate the critical issue in the previous case. Id. "Issue preclusion requires, at a minimum, that the party against whom it is being asserted was either a party to or a privy of a party to the prior action . . ." State ex rel. Tal v. City of Okla. City, 2002 OK 97, ¶ 20, 61 P.3d 234, 245. The State Auditor was not a party to the previous case and did not have a full and fair opportunity to litigate the issue of the meaning of "actual daily cost." Accordingly, Judge Stallings' order does not have preclusive effect over this case.[17]

B. The Separation of Powers Clause Does Not Bar This Court from Interpreting the Meaning of "Actual Daily Cost."

¶18 The State Auditor and Tulsa County claim district courts do not have subject matter jurisdiction over this matter because exercising jurisdiction would violate the separation of powers clause. More specifically, the State Auditor and Tulsa County contend the Legislature vested the State Auditor with discretionary executive authority to determine the "actual daily cost" of a DOC inmate, thereby prohibiting the judiciary from interfering with the State Auditor's executive power. Thus, the question is whether the separation of powers clause prevents us from determining the meaning of "actual daily cost" as provided in 57 O.S. § 38.

¶19 Subject matter jurisdiction is the "power to deal with the general subject involved in the action" or the nature of the cause of action and the relief sought. Dutton v. City of Midwest City, 2015 OK 51, ¶ 16, 353 P.3d 532, 539. We have explained that subject matter jurisdiction of a court is invoked by pleadings filed by a party with a court which demonstrates that the court has power to proceed in a case of the character presented, or power to grant the relief sought. Id. In addition to other courts, the Oklahoma Constitution specifically vests district courts with judicial power.[18] A district court's judicial power, however, is limited in scope by the Oklahoma Constitution's article providing for the separation of powers. Article 4, § 1 of the Oklahoma Constitution provides:

The Powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be Separate and distinct, and neither shall exercise the powers Properly belonging to either of the others.

Okla. Const. art. 4, § 1 (emphasis added). The doctrine of separation of powers mandates that "the whole power of one department shall not be exercised by the same hands which possess the whole power of either of the other departments; and that no one department ought to possess directly or indirectly an overruling influence over the others." State ex rel. York v. Turpen, 1984 OK 26, ¶ 9, 681 P.2d 763, 767. For example, the doctrine of separation of powers requires that "in the absence of express authority of law so to do, the judiciary will not interfere with the exercise of executive powers." Bynum v. Strain, 1923 OK 596, ¶ 11, 218 P. 883.

¶20 The Oklahoma Constitution makes the State Auditor an executive officer of the state.[19] Moreover, the Oklahoma Constitution outlines the State Auditor's powers and duties, such that she "shall perform such other duties and have such other powers as may be prescribed by law."[20] The Legislature directs the State Auditor to determine the "actual daily cost" of a DOC inmate in a county jail when the proposed amount is in dispute. The Legislature, however, failed to define the method or manner in which the State Auditor shall determine the "actual daily cost." We have said that "by failing to define the limits of [the State Auditor's] duties and to prescribe the manner of [her] performance, [she] is left to [her] own judgment in the discharge of [her] duties imposed." Clark v. Carter, 1922 OK 106, 209 P. 932, 938.

¶21 The State Auditor contends that because 57 O.S. § 38 confers on her a discretionary executive duty to determine the "actual daily cost," district courts lack subject matter jurisdiction in adjudicating what method should be used to calculate the rate.[21] The State Auditor argues that "the courts will interfere with the State Auditor's decisions and actions only if [she] acts capriciously or arbitrarily, or if [she] exceeds [her] authority or abuses [her] discretion." Independent School Dist. No. 1 of Oklahoma Cty. v. Scott, 2000 OK CIV APP 121, ¶ 23, 15 P.3d 1244, 1251. DOC counters it is not asking this Court to displace the State Auditor by calculating the "actual daily cost" reimbursement rate--that role remains with the State Auditor. Rather, DOC is requesting we provide guidance on the meaning of § 38 so that the State Auditor may perform her executive duties in accordance with the law.

¶22 Asking us to interpret the meaning of a statute does not create a separation of powers conflict. As the Judiciary, we are the "ultimate authority on the interpretation of the laws of this State." Robinson v. Fairview Fellowship Home For Senior Citizens, Inc., 2016 OK 42, ¶ 13, 371 P.3d 477, 483. The State Auditor's contention that statutory interpretation is unnecessary due to her discretion in calculating the actual daily cost is misguided. The State Auditor's statutory duties under § 38 and the discretion she has in performing those duties is predicated upon an interpretation of "actual daily cost."

¶23 In Bynum v. Strain, the removed bank commissioner sought an enjoinment of his successor, claiming the Governor's removal of him and the appointment of his successor was without authority. Bynum, 1923 OK 596, 218 P. 883. The question before this Court was whether, under our constitutional system of government, the judiciary can limit or interfere with the Chief Executive in the exercise of powers pertaining purely to the functioning of the executive department. Id. ¶ 10, 218 P. at 885. We held "in the absence of express authority of law so to do [sic], the courts will not cross the confines of judicial province and interfere with the exercise of executive powers nor with the executive's sense of his duties and responsibilities. Id. ¶ 11. However, we also recognized that if there is a question of statutory interpretation, "it then becomes the duty and proper province of the judiciary to interpret such law and declare its meaning [and] the executive will then be guided by the court's interpretation of the law and will execute the court's mandates." Id. ¶ 12.

¶24 In this instance, DOC seeks our determination of the meaning of "actual daily cost" in § 38. Our role as the Judiciary rests in statutory interpretation; therefore, interpreting the meaning of "actual daily cost" falls exclusively within our purview. The State Auditor was assigned the duty to calculate the "actual daily cost" of housing a DOC inmate in a county jail--a role that falls exclusively within the purview of the State Auditor's statutory duties. By interpreting the meaning of § 38, we are not interfering with the State Auditor's performance of her executive duty. Without our interpretation, the State Auditor effectively confers meaning to § 38 by the method she chooses which reaches into the realm of a judicial function--a task beyond the authority of the State Auditor. Ascertaining the meaning of § 38 will provide guidance to the State Auditor in her role of calculating the "actual daily cost" of housing a DOC inmate. Accordingly, the separation of powers clause does not bar our review.

C. "Actual Daily Cost" Includes Any Cost That Is Directly Attributable to Housing a DOC Inmate.

¶25 The heart of this dispute revolves around the meaning of "actual daily cost," as provided in § 38. Title 57 O.S. § 38 in pertinent part provides:

The Department of Corrections shall reimburse any county which is required to retain an inmate pursuant to subsection E of Section 37 of this title in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention, unless the actual daily cost as determined by the Department of Corrections Daily Rate as defined in this section, exceeds Twenty-seven Dollars ($27.00). If the actual daily cost as determined by the Department of Corrections Daily Rate exceeds Twenty-seven Dollars ($27.00), the county shall notify the Department of Corrections of the actual daily cost no later than September 30. If the county's actual daily cost is accepted by the Department that shall be the reimbursement rate for the county beginning the next fiscal year. If the Department rejects the county's actual daily cost application, then the actual daily cost reimbursement shall be determined by the State Auditor and shall be imposed beginning the next fiscal year. The Department shall distribute the reimbursement on a monthly basis upon receipt and approval of a billing statement from the county. The county shall use the reimbursement to defray expenses of equipping and maintaining the jail and payment of personnel.

57 O.S. § 38 (emphasis added).[22]

¶26 The DOC contends "actual daily cost" is limited to consumable costs attributable to the presence of a DOC inmate and excludes fixed costs. Tulsa County contends "actual daily cost" includes both consumable costs and fixed costs because the cost to house a DOC inmate(s) is proportionate to the total cost of housing all inmates. The Legislature did not define "actual daily cost," thus, we are confronted with a question of statutory interpretation.

¶27 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 17, 415 P.3d 521, 528. "It is presumed that the Legislature has expressed its intent in a statute's language and that it intended what it so expressed." Id. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Keating v. Edmondson, 2001 OK 110, ¶ 8, 37 P.3d 882, 886. "Only where legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation employed." Odom, ¶ 18, 415 P.3d at 528.

¶28 Because the statute does not define "Department of Corrections Daily Rate"[23] we are left with examining what costs are included in "actual daily cost." The operative word is "actual." "Actual" is a descriptive adjective, meaning "existing in fact or reality,"[24] as contrasted with what is intended, expected, or believed. By inserting "actual" before "daily cost," the Legislature modified the meaning of "daily cost" to include costs existing in fact or reality that are directly attributable to the cost of housing a DOC inmate,[25] as opposed to costs incurred by a county regardless of whether it houses a DOC inmate.

¶29 Since the inception of this suit, the parties have borrowed the terms "consumable costs" and "fixed costs" from Judge Stallings' order in case No. CV-2017-684. In her order, Judge Stallings defined "consumable costs" as "the actual costs of feeding, housing, clothing, providing medical treatment, attributable to the presence of Department of Corrections inmates in the Tulsa County jail"[26] and defined "fixed costs" as "expenses incurred regardless of the presence of Department of Corrections inmates in the Tulsa County jail."[27]

¶30 It is undisputed that the "actual daily cost" of housing a DOC inmate includes "consumable costs" such as food, clothes, and medical care. It is disputed whether "fixed costs," which the parties refer to as the jail's operating expenses, are included within "actual daily cost." Operating expenses are not necessarily dependent on the number of prisoners, as some operating expenses are inevitably incurred regardless of whether a DOC inmate is housed in a county jail. However, there may be instances when a jail's operating expenses increase due to housing a DOC inmate. For example, if a county jail employs a set number of jailers in the regular operation of its jail, that cost is not directly attributable to housing a DOC inmate. If, however, a county jail employs an additional jailer and demonstrates the hiring of the additional jailer is directly attributable to housing a DOC inmate, such cost would exist in fact and be included in the "actual daily cost." We find that "actual daily cost" includes any cost directly attributable to the housing of a DOC inmate, including consumable costs and any portion of the county jail's operating expenses that would not otherwise have been incurred but for the presence of a DOC inmate.

¶31 Our finding that "actual daily cost" encompasses costs directly attributable to housing a DOC inmate is further supported by the manifest purpose of § 38, which is directed at reimbursing county jails. The word "reimburse" means "to pay back, to make restoration, to repay that expended."[28] According to § 38, a county that incurs additional costs for housing a DOC inmate--costs not otherwise incurred--will be "reimbursed"[29] by the state. The reimbursement DOC is mandated to pay a county is solely predicated upon the presence of a DOC inmate.[30]

¶32 The State Auditor's methodology in calculating "actual daily cost" fails to account for these important distinctions. Specifically, the State Auditor employed an "operating cost-based calculation," which does not result in a determination of "actual daily cost" as defined above. Without rehashing her method in detail, the State Auditor assigned a pro rata share of the jail's operating expenses to DOC, without regard for whether those costs would have been incurred in the absence of DOC inmates.[31] Based on the foregoing, we find that the State Auditor's approach to calculating "actual daily cost" is plainly contrary to the text of 57 O.S. § 38.[32]

¶33 Reading the statute in its entirety, § 38 requires DOC to reimburse a county for the "actual daily cost" of housing a DOC inmate. "Actual daily cost" includes any cost incurred by a county shown to be directly attributable to housing a DOC inmate. The term "actual daily cost" encompasses both consumable costs (e.g., food and clothing) as well as those additional costs incurred as a direct result of housing a DOC inmate. Costs not directly attributable to the housing a DOC inmate are not reimbursable by DOC.[33]

CONCLUSION

¶34 Oklahoma law requires DOC to reimburse a county the cost of housing a DOC inmate. Title 57 O.S. 2017, § 38 sets the reimbursement rate at $27. In the event the "actual daily cost" of housing a DOC inmate exceeds $27, and DOC disputes the county's proposed "actual daily cost" amount, the State Auditor will calculate the "actual daily cost." We hold "actual daily cost" includes both consumable costs as well as those additional costs that are directly attributable to housing a DOC inmate.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

Kane, C.J., Rowe, V.C.J., Winchester, Gurich, and Kuehn (by separate writing), JJ., concur.

Kauger, Edmondson, Combs (by separate writing), and Darby, JJ., concur in part; dissent in part.

FOOTNOTES

[1] The common jails in the several counties in the charge of the respective sheriffs, shall be used as prisons:

1. For the detention of persons charged with offenses, and duly committed for trial.

2. For the detention of persons who may be duly committed, to secure their attendance as witnesses on the trial of any criminal cause.

3. For the confinement of persons pursuant to a sentence, upon a conviction for an offense and of all other persons duly committed for any cause authorized by law.

4. For the confinement of persons who may be sentenced to imprisonment in the state prison, until they shall be removed thereto.

57 O.S. § 42.

[2] The Department of Corrections shall reimburse any county which is required to retain an inmate pursuant to subsection E of Section 37 of this title in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention, unless the actual daily cost as determined by the Department of Corrections Daily Rate as defined in this section, exceeds Twenty-seven Dollars ($27.00). If the actual daily cost as determined by the Department of Corrections Daily Rate exceeds Twenty-seven Dollars ($27.00), the county shall notify the Department of Corrections of the actual daily cost no later than September 30. If the county's actual daily cost is accepted by the Department that shall be the reimbursement rate for the county beginning the next fiscal year. If the Department rejects the county's actual daily cost application, then the actual daily cost reimbursement shall be determined by the State Auditor and shall be imposed beginning the next fiscal year. The Department shall distribute the reimbursement on a monthly basis upon receipt and approval of a billing statement from the county. The county shall use the reimbursement to defray expenses of equipping and maintaining the jail and payment of personnel. The provisions in this act shall be implemented by the Department to allow sufficient time for application to FY-2019. The Department of Corrections shall reimburse the county for the emergency medical care for physical injury or illness of the inmate retained under this act if the injury or illness is directly related to the incarceration and the county is required by law to provide such care for inmates in the jail. The Department shall not pay fees for medical care in excess of the rates established for Medicaid providers. The state shall not be liable for medical charges in excess of the Medicaid scheduled rate. The Director may accept any inmate required to have extended medical care upon application of the county. 57 O.S.2017, § 38.

[3] 2011 OK AG 8, ¶0.

[4] 2011 OK AG 8, ¶ 27.

[5] Id.

[6] Bd. Of Cnty. Comm'rs of the Cnty. of Bryan v. Oklahoma Dep't of Corrections, No. CV-2012-1272 (District Court of Oklahoma County, Sept. 25, 2013).

[7] Like the Attorney General's opinion, neither the district court nor COCA provided an opinion on whether $27 was a sufficient amount to reimburse a county for the costs of housing DOC inmates.

[8] The $55.81 rate factored in costs for items such as employee salary, medical care, booking, employee benefits, building depreciation, utilities, transport, administration, operating supplies, and professional and technical services.

[9] Bd. Of Cnty. Comm'rs of the Cnty. Of Tulsa v. Oklahoma Dep't of Corrections, No. CV-2017-684 (District Court of Oklahoma County, March 31, 2017).

[10] Department of Corrections Motion for Summary Judgment and Brief in Support, 25. Case No. CV-2017-684.

[11] DOC Motion for Summary Judgment, 11.

[12] Petition for Review, Or in the Alternative, Declaratory Judgment or Writ of Mandamus, Ex. D. District Court Order, Case No. CV-2017-684.

[13] To reach this number, the State Auditor asked Tulsa County to complete the U.S. Marshals Service Form USM-243 Cost Sheet for Detention Services. This form is used to determine the per diem rate to house federal prisoners in local facilities and allows fixed costs like personnel and depreciation to be used in the calculation.

Rather than attempting to paraphrase her method, we have included an excerpt from the State Auditor's Letter to Tulsa County wherein she explains her calculations:

SAI has made a reasonable determination as to the daily, per inmate, cost to house an individual in the county jail by dividing the average annual number of prisoners by the total annual operating costs of the jail and dividing again by 365 days.

The daily average number of inmates incarcerated at the jail in FY19 was 1,398. The facility's annual operating costs totals $32,351,882.42.

32,351,882.42 ÷ 1,398 ÷ 365 = $63.40

At any given time, DOC housed an average of 77 prisoners at the county jail in FY19 which was equal to 5.51 percent of the total jail population. SAI took the average number of DOC prisoners housed at the county jail, multiplied this percentage by the total annual operating costs of the jail, divided this figure by 77 prisoners, then again by 365 days, to arrive at a figure very close to the more practical calculation noted above.

$32,351,882.42 X 0.0551 = $1,726,028.26 ÷ 77 = 22,415.95 ÷ 365 = $63.43

The average of both calculations would suggest a daily reimbursement rate to house a prisoner in the county jail of $63.42.

[14] District Court Journal Entry of Judgment, 3 (dated September 8, 2021).

[15] COCA Opinion, ¶ 1.

[16] COCA Opinion, ¶ 26.

[17] Regardless of whether issue preclusion bars judicial review, Judge Stallings' order was interlocutory. An interlocutory order is an order which is not "final." DLB Energy Corp. v. Oklahoma Corp. Comm'n, 1991 OK 5, ¶ 7, 805 P.2d 657, 660. "The issuance of an interlocutory order leaves the parties in court to try the issues on the merits." Id. Because Judge Stallings' order was interlocutory, issues remained to be tried by the parties, making her order not final for purposes of issue preclusion.

[18] § 1. Courts in which judicial power vested.

The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, District Courts, and such Boards, Agencies and Commissions created by the Constitution or established by statute as exercise adjudicative authority or render decisions in individual proceedings. Provided that the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute shall continue in effect, subject to the power of the Legislature to change or abolish said Courts, Boards, Agencies, or Commissions. Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances. Okla. Const. art 7, § 1.

[19] § 1. Executive officers enumerated - Offices and records - Duties.

A. The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law. Okla. Const. art. 6, § 1 (A).

[20] Okla. Const. art. 6, § 19.

[21] In Board of County Commissioners of County of Seminole v. Oklahoma Department of Corrections, 2021 OK CIV APP 33, 499 P.3d 33, COCA determined the district court lacked subject matter jurisdiction to adjudicate any claim that would require it to decide the "actual daily cost reimbursement" referenced in 57 O.S. § 38, finding that determination rests exclusively with the State Auditor.

We note, parenthetically, that DOC's prevailing argument in Seminole wherein it argued that the State Auditor had exclusive jurisdiction over disputes between counties and DOC for reimbursement claims contradicts its argument here that "asking the judiciary to interpret a statute does not create a separation of powers conflict with the Auditor's § 38 duties."

The separation of powers clause does not bar this Court from exercising jurisdiction to determine the meaning of a statute where the interpretation of a statute directly relates to how an officer of the executive branch must perform her statutory duty. Accordingly, our finding today overturns Seminole.

[22] We note that "the actual daily cost as determined by the Department of Corrections Daily Rate as defined in this section," is not defined in this section.

[23] 57 O.S. § 38 fails to define "The Department of Corrections Daily Rate" and fails to define "actual daily cost."

[24] "Actual", Merriam-Webster, https://www.merriam-webster.com/dictionary/actual (last visited Sept. 19, 2023).

[25] Section 37(F) provides that "the Department will be responsible for the cost of housing [an] inmate in the county jail. . . ." 57 O.S. § 37(F) (emphasis added). Section 38 requires DOC to reimburse any county which is required to "retain an inmate."

[26] Judge Stallings' Order, 2 (dated August 29, 2019).

[27] Id., 2-3.

[28] "Reimburse", Black's Law Dictionary (5th ed. 1979).

[29] 57 O.S. § 38.

[30] A state inmate may be housed in county jails when all correctional facilities reach maximum capacity; for temporary detention for purposes of trial; or for confinement pursuant to a sentence. 57 O.S. § 37; 57 O.S. § 42. The longevity of a state inmate's stay in a county jail may vary but DOC is "responsible for the cost of housing the inmate in the county jail . . . from the date the judgment and sentence was ordered by the court until the date of transfer of the inmate from the county jail." 57 O.S. § 37(F).

[31] In concluding her letter to Tulsa County, the State Auditor states that she "does not offer an opinion as to whether the total operating cost-derived method for determining the daily reimbursement rate is more representative of the County's actual cost than a compromise for an incremental rate above the statutorily mandated maximum of $27 per day, per prisoner."

[32] Because the State Auditor's reimbursement rate calculation is contrary to § 38 we need not address whether the process in which she made that calculation was in violation of the Oklahoma Administrative Procedure Act.

[33] Our finding comports with Okla. Const. art. 21, § 1, which we have interpreted to mean county funds may not be used to support state institutions. See State ex rel. Dept. Human Serv. v. Malibie, 1981 OK 18, ¶ 27, 630 P.2d 310, 317 ("Article 21, Section 1, require[s] that State funds, not county funds, be expended to support and maintain state institutions").

KUEHN, J., SPECIALLY CONCURRING:

¶1 I agree with the Majority that issue preclusion does not bar the courts from hearing this case.

¶2 I also agree with the Majority that the separation of powers clause does not prevent this Court from interpreting the meaning of "actual daily cost." Section 38 does not give the State Auditor authority to define "actual daily cost"[1], and the statute's language defining that term is ambiguous. When a question of statutory interpretation arises, the judiciary is the proper branch of government to interpret such law and determine its meaning to help guide the executive branch in its application. Bynum v. Strain, 1923 OK 596, ¶ 12, 218 P. 883, 885. We need not defer to the Auditor in defining the phrase "actual daily cost", because defining statutory terms is not among the Auditor's duties.

¶3 It is important to understand that in interpreting the ambiguous statutory term, this Court's interpretation is not intended to direct the State Auditor as to how she should do her job--in fact, it should not. Instead, our interpretation of the definition of "actual daily cost" should do no more than broadly guide the State Auditor, and counties, when determining what should be included in their calculations. The State Auditor is an executive of the state, and under Title 57 Section 38 may, to resolve a dispute between the DOC and a county, determine the amount of actual daily cost reimbursement due the county.

¶4 I write separately to address the Majority's third assertion that "actual daily cost" should include any cost that is "directly attributable" to housing a DOC inmate. It is undisputed that consumable costs should be included in the calculation of the "actual daily cost" of housing a DOC inmate. I agree with the Majority that sometimes a jail's fixed, operating expenses can increase as a result of housing a DOC inmate. The Majority deliberately sets out a general definition which includes both consumable costs and the possibility of fixed costs. But, in my view, neither this Court nor district courts are equipped to determine actual costs for any county that are directly attributable to the housing of a DOC inmate. As the statute provides, those calculations are better left to counties, the State Auditor, and their accountants.

FOOTNOTES

[1] The Legislature can, and should, define this term if the Court's interpretation is not acceptable. The Legislature can also directly mandate that the State Auditor should define "daily rate" for Department of Corrections and the counties. This would be a perfect example of the correct workings of the separation of powers.

COMBS, J., with whom KAUGER, EDMONDSON, and DARBY, JJ., join, concur in part, dissent in part:

¶1 I concur in the majority opinion that we are asked to interpret the term "actual daily cost" and this Court has subject matter jurisdiction over this matter. However, I dissent to the majority opinion's interpretation. The Legislature granted the State Auditor with discretion to determine the "actual daily cost reimbursement." See 57 O.S. § 38 ("the actual daily cost reimbursement shall be determined by the State Auditor . . . ."). I agree that determining an actual daily cost reimbursement is within the authority of the State Auditor; however, interpretation of a term which lacks a history of administrative interpretation nor is defined by the State Auditor or statute is a justiciable matter. Our review, therefore, should be to interpret the term "actual daily cost" and determine whether there has been an abuse of discretion by the State Auditor.

¶2 The majority opinion limits "actual daily cost" to only the cost "directly" attributable to housing a DOC inmate "as opposed to costs incurred by a county regardless of whether it houses a DOC inmate." It provides that such costs would include an "additional jailer [that] is directly attributable to housing a DOC inmate." It finds any cost not directly attributable to housing an inmate is not reimbursable. However, 57 O.S. § 38 provides "the reimbursement [is] to defray expenses of equipping and maintaining the jail and payment of personnel." It does not say, as the majority opinion asserts, that it is for payment of personnel that have been hired to take care of a specific inmate. In order to "house" an inmate you must have a house, a functioning facility, staffed and equipped to house an inmate on any given day or days. Further, under § 38, the "actual daily cost" as determined by the State Auditor will be imposed at the beginning of the "next fiscal year." This is more indication that the Legislature was not referring to additional costs attributable to a specific inmate but would include the pro rata costs attributable to "equipping and maintaining the jail and payment of personnel" in general. The issues in this case are far-reaching; however, simply put, the Department of Corrections should pay for the incarceration of their inmates in Oklahoma's county jails. There are 77 counties with different needs and expenses related to housing inmates. The majority opinion's definition of "actual daily cost" would create an impractical and potentially fiscally impossible remedy. The State Auditor used the U.S. Marshals Service Form USM-243 which assists in calculating a per diem rate to house federal prisoners in local facilities. The form uses criteria for determining a rate which includes fixed costs like personnel and depreciation. The State Auditor used this form as well as data like the average number of inmates and the total cost to operate a jail to determine a per diem "actual daily cost." Her methods were a realistic, practical and affordable solution to the problem and clearly come within the language of 57 O.S. § 38. Besides interpreting a statutory term, the type of review appropriate here should be whether the State Auditor abused her discretion. I would find that, under 57 O.S. § 38, the State Auditor's method for calculating "actual daily cost" was not an abuse of discretion.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2011 OK AG 8, 
Question Submitted by: The Honorable Josh Brecheen, State Senator, District 6
Discussed

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2000 OK CIV APP 121, 15 P.3d 1244, 71 OBJ 3273, 
INDEPENDENT SCHOOL DIST. NO. 1 v. SCOTT
Discussed

 
2015 OK CIV APP 86, 362 P.3d 241, 
BD. OF COUNTY COMMISSIONERS OF COUNTY OF BRYAN v. OKLAHOMA DEPT. OF CORRECTIONS
Discussed

 
2021 OK CIV APP 33, 499 P.3d 33, 
BD. OF COUNTY COMMISSIONERS v. STATE ex rel. OKLA. DEPT. OF CORRECTIONS
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1991 OK 5, 805 P.2d 657, 62 OBJ 431, 
DLB Energy Corp. v. Oklahoma Corp. Com'n
Discussed

 
2001 OK 110, 37 P.3d 882, 72 OBJ 3672, 
KEATING v. EDMONDSON
Discussed

 
1922 OK 106, 209 P. 932, 86 Okla. 126, 
CLARK v. CARTER
Discussed

 
1923 OK 596, 218 P. 883, 95 Okla. 45, 
BYNUM v. STRAIN
Discussed at Length

 
1995 OK 33, 896 P.2d 522, 66 OBJ 1239, 
Carris v. John R. Thomas and Associates, P.C.
Discussed

 
2002 OK 97, 61 P.3d 234, 
STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed

 
2004 OK 7, 85 P.3d 841, 
FANNING v. BROWN
Discussed

 
2007 OK 38, 160 P.3d 959, 
LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed

 
2007 OK 39, 176 P.3d 1194, 
OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed

 
2015 OK 51, 353 P.3d 532, 
DUTTON v. CITY OF MIDWEST CITY
Discussed

 
2016 OK 42, 371 P.3d 477, 
ROBINSON v. FAIRVIEW FELLOWSHIP HOME FOR SENIOR CITIZENS, INC.
Discussed

 
2018 OK 23, 415 P.3d 521, 
ODOM v. PENSKE TRUCK LEASING CO.
Discussed

 
1981 OK 18, 630 P.2d 310, 
State ex rel. Dept. of Human Services v. Malibie
Discussed

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 952, 
Jurisdiction of Supreme Court
Cited

Title 57. Prisons and Reformatories

 
Cite
Name
Level

 
57 O.S. 37, 
Facilities Reaching Maximum Capacity - Transfer - Receipt of Judgment and Sentence
Discussed at Length

 
57 O.S. 38, 
Reimbursement of Counties - Medical Care
Discussed at Length

 
57 O.S. 42, 
Common Jails Used as Prisons - When Appropriate
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA